# IN THE SUPREME COURT OF IOWA

No. 13–1438

Filed June 26, 2015

**ROSELENE SANON** and **NEMI SANON,** Individually and as Administrators of the ESTATE OF NEHMSON D. SANON, and **PAULETTE CEZIL POGUE,** Individually and as Administrator of the ESTATE OF GAEL CEZIL HRISPIN,

Appellants,

vs.

**CITY OF PELLA,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Plaintiffs appeal and the city cross-appeals from a district court's grant of partial summary judgment on claims arising out of the drowning deaths of two boys at the city's swimming pool. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas J. Duff of Duff Law Firm, P.L.C., Des Moines, and Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellants.

Jason C. Palmer, Mark L. Tripp, and Thomas M. Boes of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**WIGGINS, Justice.**

The parents of two children filed a claim for negligence against a city following a drowning in the municipal pool. The parents also filed a constitutional due process claim against the city for the drowning incident under the state-created danger doctrine. The city filed a motion for summary judgment claiming it had statutory immunity under Iowa Code section 670.4(12) (2009) as to the negligence claims.[1] Section 670.4(12) grants the city immunity from liability, unless the parents' claim is based upon an act or omission of an officer or employee of the city that constitutes a criminal offense. The city also alleged there was not a genuine issue of material fact to allow the claim under the state-created danger doctrine to proceed.

The district court granted summary judgment on all of the parents' negligence claims except that part of the claim in which the parents allege the city employee's acts constituted the criminal offense of involuntary manslaughter. The district court also found there was no genuine issue of material fact as to the due process claim. Both parties filed applications for interlocutory appeal, which we granted. After submission of this case to our court, the parents withdrew their argument concerning the due process claim. Thus, we will not reach that issue in this appeal and affirm the district court's dismissal of the due process claim.

In this appeal, we conclude the parents have alleged the city violated administrative rules constituting criminal offenses under the Iowa Code. Thus, if the city violated these rules, the city is not entitled to immunity under Iowa Code section 670.4(12). We also hold the

---

[1]All Iowa Code references are to the 2009 Code, unless otherwise indicated.

parents must prove by a preponderance of the evidence that the city's acts or omissions constitute involuntary manslaughter to remove it from the immunity granted by section 670.4(12). Thus, we remand the case to the district court for further proceedings.

### I. Background Facts and Proceedings.

The City of Pella began construction of the Pella Aquatics Center in 2003 and completed the aquatics center by 2004. The deep end of the outdoor pool is thirteen feet deep. The pool features diving boards and slides. The City constructed the pool with underwater lighting to illuminate the pool at night. By late 2004, rust appeared on the back of the light sockets of the underwater lights in the pool. In early 2005, Jan Bensink, the City's aquatics manager, and Kevin Vos, the community services director, decided the aquatics center should no longer use the underwater lights, even though the lights still worked.

Bensink and Vos did not consult anyone within the City's electrical department, the architect, or the engineer responsible for the lighting system before making the decision to discontinue using the underwater lights. State regulations require lighting sufficient "so that all portions of the swimming pool, including the bottom and main drain, may be clearly seen." Iowa Admin. Code r. 641—15.4(4)(*m*)(2)(1) (2009). The rules also provide

> [a] swimming pool that is less than 8 ft deep shall be closed if the grate openings on the main drain are not clearly visible from the deck. A swimming pool that is 8 ft deep or deeper shall be closed if the main drain is not clearly visible from the deck.

*Id.* r. 641—15.4(2)(*c*).

The City did not arrange for additional overhead lighting to compensate for the lack of underwater lighting or hire additional

lifeguards. The City rented the aquatics center's facilities for nighttime pool parties twenty to thirty times a year. The City did not turn on the underwater lights for any of these events.

In January 2006, the City removed a portion of the pool deck to inspect the electrical system and discovered numerous construction defects. Central Electric Company (CEC) was responsible for the electrical work on the pool, including the underwater lighting system. The City filed suit against CEC, alleging breach of contract, breach of express and implied warranties, negligence, and fraud. At trial on these claims in July 2010, two expert witnesses testified for the City about the lighting. Michael Fisher, an architectural engineer, opined the overhead lighting did not meet the requirements of the Iowa Department of Public Health. Fisher also testified that to enhance the overhead lighting to meet safety standards would require four new light poles, at an estimated cost of $97,500. Kurt Ewert, the electrical design engineer for the pool project, testified "using the overhead lighting only right now [did] not meet the Iowa regulations." He testified underwater lighting is safer than overhead lighting, which creates glare off the water surface. Neither Fisher nor Ewert actually visited the pool or measured the lighting themselves; instead, they based their conclusions on information provided to them by the City.

Vos testified he was ultimately in charge of the pool. He stated he had concerns about letting his own children swim in the pool at night without underwater lights:

> Q. Now, you mentioned that you had—you had personal concerns about the underwater lights, correct? A. Correct.
>
> Q. And you were concerned about allowing your children to swim at the pool, is that correct? A. Correct, during the nighttime.

> Q. But you allowed everyone else's children to swim at the pool and took their money, correct? A. It was according to the city. They allowed that or whatever. I as a family member or as a parent or whatever, that was just my concern for my kids or whatever. But that—that's the way I made that decision.

On July 14, 2010, Gael Chrispin, age fourteen, and Nehmson Sanon, age fifteen, drowned at the Pella Aquatics Center. The boys, both from Kansas City, Missouri, were participants in a sports camp operated by the Fellowship of Christian Athletes (FCA). The camp began on July 12 at the campus of Central College in Pella. On the evening of July 14, the FCA rented the aquatics center for a private pool party after the normal pool closing time. The City, for a fee of $604, allowed the FCA exclusive use of the indoor and outdoor pool facilities between 8:30 p.m. and 9:30 p.m. Approximately 175 campers and 21 FCA counselors attended the pool party. The City provided lifeguards. The boys' parents had completed and signed a "student Participant Permission/Waiver Form" for the FCA and indicated their sons were nonswimmers. The FCA did not provide those waivers to the City. No one told the City or its lifeguards that the campers included nonswimmers.

The water in the pool became murky that night to the point the lifeguards on the pool deck could not see the drain at the bottom of the deep end.[2] The underwater lighting system was not in use that night, although it was operable. During the party, the boys used the drop slide in the deep end of the large outdoor pool, and the lifeguards on duty did not notice the boys failed to surface and exit the pool. At the end of the

---

[2]The record does not indicate how often the water became murky to the point the drain in the deep end was no longer visible, but the City admitted the water was murky on the evening in question.

party, the FCA discovered the boys' absence. At that time, the lifeguards found the boys' bodies in the deep end of the pool near the main drain.

On March 21, 2012, the decedents' parents, individually and as administrators of the decedents' estates, filed a civil action against the City and the FCA.[3] The petition alleged negligence, conduct constituting a criminal offense, premises liability, a constitutional due process violation, and loss of consortium. On May 21, the City filed an answer and a motion for summary judgment based on the immunity in Iowa Code section 670.4(12). The City alternatively argued the parents could not meet the elements of the due process claim. The parents filed a resistance and amended their petition on August 31, adding a claim for nuisance and alleging that the acts or omissions of the City constituted involuntary manslaughter, a criminal offense avoiding the immunity. The parents also claimed the deficiencies in water clarity and lighting of the pool constituted a criminal offense as a violation of the rules promulgated by the department. The FCA joined in the parents' resistance to the City's motion for summary judgment.

The district court granted partial summary judgment based on immunity, dismissing the remaining tort theories "to the extent those claims are premised on alleged violations of applicable administrative regulations." The court, however, denied the City's motion for summary judgment to the extent that the undisputed acts or omissions of the City could constitute involuntary manslaughter as defined in Iowa Code section 707.5(1).

---

[3]For the sake of brevity, we will refer to the appellants collectively as the parents.

Both the parents and the City filed motions to amend or enlarge the summary judgment ruling, asking the court to clarify the immunity on the claim of negligent supervision. The City also asked the court to determine the burden of proof for the criminal offense of involuntary manslaughter, arguing the court should require the parents to prove their claims beyond a reasonable doubt. On August 12, the district court issued a ruling clarifying that the claims of negligence and premises liability, including negligent supervision, survived to the extent they could constitute the criminal offense of manslaughter. The court declined to set the burden of proof for the offense of manslaughter at trial because to do so would be to "render an advisory opinion." The parents voluntarily dismissed their claim for nuisance after the court's ruling on the motion for summary judgment.

The City and the parents filed unresisted applications for interlocutory appeal. We granted both applications.

## II. Issues.

We must decide whether a violation of an administrative rule promulgated by the Iowa Department of Public Health constitutes a crime and removes the immunity provided under Iowa Code section 670.4(12). In regards to the application for interlocutory appeal filed by the City, we must determine if the district court is correct in finding manslaughter is a criminal offense removing the immunity provided under section 670.4(12) and what level of proof is needed to remove this claim from the immunity.

## III. Standard of Review.

We review cases resolved "on summary judgment for correction of errors at law." *Ne. Cmty. Sch. Dist. v. Easton Valley Cmty. Sch. Dist.*, 857 N.W.2d 488, 491 (Iowa 2014). Summary judgment is proper "where

there are 'no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.' " *Id.* at 491–92 (quoting *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005)). Additionally, this case requires us to construe the Iowa Code and the Iowa Administrative Code. We review issues of statutory construction for corrections of errors at law. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008).

**IV. Whether a Violation of a Rule Promulgated by the Iowa Department of Public Health Constitutes a Crime to Remove the Immunity Provided Under Iowa Code Section 670.4(12).**

**A. Statutory Interpretation—General Principles.** When we interpret a statute, our goal is to determine the legislative intent of the statute. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). In determining legislative intent, we look at the words used by the legislature when it enacted the statute. *Id.* When interpreting a statute, we are required to assess a statute in its entirety, not just isolated words or phrases. *State v. Young,* 686 N.W.2d 182, 184–85 (Iowa 2004). We also look at the entire chapter when the legislature enacted the statute, so we may give the statute its proper meaning in context. *Cf. City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 314 (Iowa 2006) ("The assessment of an ordinance requires consideration in its entirety so that the ordinance may be given its natural and intended meaning."); *Kordick Plumbing & Heating Co. v. Sarcone*, 190 N.W.2d 115, 117 (Iowa 1971) ("Generally speaking, ordinances promulgated pursuant to authority delegated to a local governing body are extensions of state statutes and are to be construed as statutes . . . ."). We also find the legislative history of a statute is instructive of intent. *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006).

**B.  The District Court's Decision.**  The district court determined the outcome of this issue rested with the interpretation of three statutes. The first statute provides:

> The liability imposed by section 670.2 shall have no application to any claim enumerated in this section.  As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability.
>
> . . . .
>
> 12.  A claim relating to a swimming pool or spa as defined in section 135I.1 which has been inspected by a municipality or the state in accordance with chapter 135I, or a swimming pool or spa inspection program which has been certified by the state in accordance with that chapter, whether or not owned or operated by a municipality, unless the claim is based upon an act or omission of an officer or employee of the municipality and the act or omission constitutes actual malice or a criminal offense.

Iowa Code § 670.4(12).  This section immunizes the City from the tort liability alleged by the parents unless "the act or omission constitutes actual malice or a criminal offense."  *Id.*

The next statute relevant to the district court's decision states:

> Any person who knowingly violates any provision of this chapter, or of the rules of the department, or any lawful order, written or oral, of the department or of its officers, or authorized agents, shall be guilty of a simple misdemeanor.

*Id.* § 135.38.

The final statute used by the district court states, "A person who violates a provision of this chapter commits a simple misdemeanor. Each day upon which a violation occurs constitutes a separate violation." *Id.* § 135I.5.

The district court relied on an unpublished court of appeals opinion *Larsen v. City of Reinbeck*, No. 09–0163, 2009 WL 3064658 (Iowa

Ct. App. Sept. 17, 2009). In that opinion, the court of appeals found a violation of a rule relating to swimming pools is not a criminal violation for two reasons. *Id.* at *2. First, Iowa Code section 135I.5 only criminalizes violations of the chapter and the administrative rules in question are not part of chapter 135I. *Id.* at *1, *3. Second, the court of appeals found section 135.38 only applied to the department's programs specifically administered under chapter 135 and was inapplicable to swimming pool regulations promulgated under chapter 135I. *Id.* Relying on *Larsen*, the district court found the City did not waive immunity under the criminal offense exception contained in section 670.4(12).

**C. Analysis.** We begin our analysis by tracing the history of present day chapter 135. In 1923, at an extraordinary session, the legislature passed a bill forming the state department of health.[4] 1923 Iowa Acts Extraordinary Sess. (unpublished) ch. 164, §§ 1–24, 26 (codified at Iowa Code ch. 105 (1924)). The legislature codified the laws relating to the department in chapter 105 of the Code. *See* Iowa Code ch. 105 (1924).

In 1923, when the legislature formed the department, there was no administrative procedure act in place. In chapter 105, the legislature gave the department certain powers including the power to establish, publish, and enforce rules. *Id.* § 2191(17). Specifically, the legislature stated:

> The commissioner of public health shall be the head of the
> "State Department of Health", which shall:

---

[4]In 1986, under a legislative reorganization of state government, the legislature renamed the state department of health to the Iowa Department of Public Health. 1986 Iowa Acts ch. 1245, § 1104 (codified at Iowa Code § 135.11 (1987)). In this opinion, we will refer to the department of health and the department of public health as the department.

. . . .

> 17. Establish, publish, and enforce rules not inconsistent with law for the enforcement of the provisions of this title and for the enforcement of the various laws, the administration and supervision of which are imposed upon the department.

*Id.* The legislature granted the department the authority to establish rules not only for chapter 105, but also for the other chapters of the Code contained in the same title. *See id.* In 1923, the laws governing the department were contained in title VII of the Code. *Id.* at xv, Analysis of the Code by Titles and Chapters, title VII. Other laws contained in title VII were laws regarding the state board of health, local boards of health, contagious and infectious diseases, venereal diseases, disposal of dead bodies, dead bodies for scientific purposes, public health nurses, maternity hospitals, and registration of vital statistics. *Id.* From this language, it is clear the statutory scheme developed by the legislature was to give the department the power to establish, publish, and enforce administrative rules for all the chapters contained in title VII of the Code. This means the authorization for establishing, publishing, and enforcing the rules governing the subject matter contained in the chapters in title VII came from chapter 105.

In addition to the authorization portion of chapter 105, the legislature enacted a penalty provision. *Id.* § 2217. It provided:

> Any person who knowingly violates any provision of this chapter, or of the rules of the department, or any lawful order, written or oral, of the department or of its officers, or authorized agents, shall be guilty of a misdemeanor.

*Id.* Because the rules of the department covered all the chapters contained in title VII, a violation of any rule established by the

department concerning any matter contained in any chapter found under title VII was a misdemeanor.

A 1933 amendment to section 2217 supports our conclusion. As background to discussing this amendment, we must first discuss the state of the law prior to the amendment. In 1923, when the legislature formed the department, it also gave the department the power to "[e]nforce the law relative to the 'Practice of Certain Professions Affecting the Public Health', title 8." *Id.* § 2191(15). The authority of the department to adopt rules concerning the "Practice of Certain Professions Affecting the Public Health," was not found in chapter 105 or in title VII. The legislature gave the department the authority to adopt the rules concerning the "Practice of Certain Professions Affecting the Public Health," in section 2525, chapter 115, title VIII. *See id.* § 2525.

The 1933 amendment to section 2217 added the following sentence to the penalty provision: "If said rules relate to the practice of cosmetology said misdemeanors shall be punished by a fine of not to exceed one hundred dollars or by imprisonment not to exceed thirty days." 1933 Iowa Acts Extraordinary Sess. ch. 30, § 8 (codified at Iowa Code § 2217 (1935)). In other words, the legislature evidenced a clear intent to have a violation of a department rule enacted under the authority of a Code provision not contained in the same chapter as section 2217 to be enforced under section 2217.

This leads us to examine the Code in effect on the day of the drownings. The 2009 Code contained the following provision regarding the department's authority to establish, publish, and enforce rules:

> The director of public health shall be the head of the "Iowa Department of Public Health," which shall:
>
> . . . .

> 13. Establish, publish, and enforce rules not inconsistent with law for the enforcement of the provisions of *chapters 125 and 155, and Title IV, subtitle 2, excluding chapter 146* and for the enforcement of the various laws, the administration and supervision of which are imposed upon the department.

Iowa Code § 135.11(13) (emphasis added).[5] Except for the italicized words, section 135.11(13) contains the same language as the original version found in section 2191(17) of the 1924 Code. The reason the italicized language changed is that the legislature has given the department authority over laws contained in additional chapters of the Code.

In 2009 the language in section 135.11(13) gave the department the authority to establish, publish, and enforce rules for all the provisions of title IV, subtitle 2, excluding chapter 146 of the Code. *Id.* A review of the Code reveals title IV, subtitle 2 includes chapter 135I. *Id.* at xi–xii, Analysis of the Code by Titles, Subtitles, and Chapters, Vol. II. Accordingly, we find the legislature gave the department the authority to establish, publish, and enforce rules regarding swimming pools and spas under section 135.11(13).

The penalty provision found in section 135.38 of the 2009 Code is the same as the penalty provision found in section 2217 of the 1924 Code. *Compare* Iowa Code § 135.38 (2009), *with id.* § 2217 (1924). A violation of a department rule in 1924 was a misdemeanor. Therefore, a violation of the department rules relied upon by the parents is a misdemeanor under section 135.38.

---

[5]At some point the general assembly reorganized the Iowa Code, moving Public Health from title VII to title IV where it is currently found.

Before moving on to other issues, we think it is important to address the arguments the district court used and the City urges us to adopt. The City claims section 135I.4(5) is the authority for the department to adopt the rules relied on by the parents; thus, the penalty provisions of section 135.38 do not apply. We disagree.

First, we have found the rules relied upon by the parents are authorized by section 135.11(13). The language of section 135I.4(5) states the department may "[a]dopt rules in accordance with chapter 17A for the implementation and enforcement of this chapter and the establishment of fees." *Id.* § 135I.4(5). We do not think the language of section 135I.4(5) either authorizes the adoption of the rules or conflicts with section 135.11(13).

We have found section 135.11(13) authorizes the adoption of the rules. Section 135I.4(5) merely requires that any adoption of a rule must be done under the laws established by chapter 17A, the Iowa Administrative Procedure Act (IAPA). *See* Iowa Code ch. 17A. At the time section 2191(17), now section 135.11(13), was enacted in 1923, we did not have an IAPA. Reading section 135.11(13) in tandem with section 135I.4(5) gives the department the authority and *means* to adopt rules.

Second, even if we were to find the legislature gave the department the authority to enact the rules relied upon by the parents solely under section 135I.4(5), the outcome would not change. As seen by the 1933 amendments concerning cosmetologists, the legislature's intent was that the penalty provisions in section 135.38 apply to department rules adopted under other sections of the Code within the control of the department.

Lastly, the City argues a violation of any rule promulgated by the department regarding swimming pools does not constitute a crime

because section 135I.5 states, "A person who violates a provision of this chapter commits a simple misdemeanor." *Id.* § 135I.5. It argues because section 135I.5 does not reference the word "rule," the legislature did not criminalize a violation of a rule. It reinforces this argument by claiming the chapters of the Code discussing the other functions under the control of the department refer to rules in the penalty provision and section 135I.5 does not. *See, e.g.,* Iowa Code § 136C.4(1) ("It is unlawful to operate or use radiation machines or radioactive material in violation of this chapter or of any rule adopted pursuant to this chapter."). We once more disagree.

We are required to read statutes in their entirety. *See State v. Kostman,* 585 N.W.2d 209, 212 (Iowa 1998) ("We will consider the challenged statute in its entirety and *in para materia,* or together, with other pertinent statutes."). Our rules of statutory construction provide "[a]mendments by implication are not favored, and if possible statutes will be construed so as to be consistent with each other." *Caterpillar Davenport Emps. Credit Union v. Huston,* 292 N.W.2d 393, 396 (Iowa 1980). Additionally, "[s]ubsequent legislation does not retroactively amend legislation or *declare the intent of a prior General Assembly.*" 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 22:13, at 294 (7th ed. 2009) (emphasis added).

Applying these principles, we first note there is nothing in the legislative history to indicate the legislature considered Iowa Code section 135.38 when it enacted the penalty provisions of section 135I.5. Thus, there is no basis for us to say the legislature's enactment of section 135I.5 amended or modified the effect of section 135.38. In addition, the enactment of section 135I.5 cannot in and of itself amend or declare the statutory intent of section 135.38. Thus, the enactment of section 135I.5

did not change or amend the original legislative intent of 135.38 criminalizing a violation of a department rule.

Moreover, section 135.38 and section 135I.5 are not inconsistent with each other. Just the opposite is true. When we read these sections in tandem, section 135.38 criminalizes a violation of the department rules, while section 135I.5 criminalizes a violation of a statute contained in chapter 135I.

Although other chapters of the Code may have different criminalization schemes, we need to focus on sections 135.38 and 135I.5 and their effect on each other at the time when the legislature enacted section 135I.5. We reach this conclusion because the legislature did not pass the other chapters cited by the City criminalizing violations of the rules contemporaneously with section 135I.5. Therefore, we find when the legislature enacted section 135I.5, it did not intend to modify section 135.38, but rather created a comprehensive regulatory scheme criminalizing a violation of the rules and the Code provisions of chapter 135I.

A misdemeanor is a "criminal offense." *In re Prop. Seized from Kaster*, 454 N.W.2d 876, 878 (Iowa 1990) ("[I]t appears well settled that [criminal offense] refers to conduct subjecting the offender to imprisonment or fine and includes misdemeanors as well as felonies."). Section 670.4(12) exempts criminal offenses from the immunity it provides to the City. *See* Iowa Code § 670.4(12). Accordingly, the district court erred in granting summary judgment because a violation of the rules relied upon by the parents is a criminal offense under Iowa Code section 135.38.

**V.    Whether the District Court Was Correct in Finding Manslaughter Is a Criminal Offense Removing the Immunity Provided Under Iowa Code Section 670.4(12).**

The City cross-appeals the district court's ruling that the parents' claims survive summary judgment to the extent that the acts and omissions of a city employee or officer could constitute involuntary manslaughter.  Under Iowa Code section 707.5(2), "[a] person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury."  The district court found the undisputed acts and omissions of City employees or officers, viewed in the light most favorable to parents, could fall under that definition.[6]  The City argues that no employee or officer's actions can constitute manslaughter as a matter of law because there has not been a criminal conviction or even a criminal prosecution.  The City alternatively argues the parents must prove manslaughter beyond a reasonable doubt.

The City focuses on the word "constitutes" from section 670.4(12), selectively citing dictionary definitions to emphasize that something is "constituted" when it is formally established.  The City argues the only way a party can formally establish a criminal offense is by a conviction.  We disagree.

"By reference to similar statutes, prior judicial determinations, and the dictionary, we are satisfied the term 'criminal offense' refers to that conduct which is prohibited by statute and is *punishable* by fine or imprisonment."  *In re Kaster*, 454 N.W.2d at 878 (emphasis added).

---

[6]The City did not move for summary judgment on grounds that the evidence as a matter of law is insufficient to prove manslaughter and does not attempt to raise that argument on appeal.  We express no opinion whether the facts viewed in the light most favorable to the parents are sufficient to support findings required to establish the offense of manslaughter.

Conduct need not be punished or result in a conviction to be punishable. We conclude no conviction is required to avoid the immunity defense. We also note that the immunity in section 670.4(12) can be avoided through a finding of actual malice, which requires no criminal prosecution or conviction. This indicates the legislature did want to immunize heightened misconduct, but stopped short of requiring a criminal conviction.

We recently declined to require a criminal prosecution or conviction to establish the violation of an attorney disciplinary rule that required a finding the lawyer committed a "criminal act." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 13 (Iowa 2012) (holding an attorney's acts of extortion violated Iowa Rule of Professional Conduct 32:8.4(b)). We concluded "the absence of criminal charges, or even acquittal of criminal charges, is not a defense." *Id.* (citing *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 299 (Iowa 2010) (holding respondent's failure to file tax returns in accordance with federal law was a violation of rule 32:8.4(b), even though he was never criminally charged)); *see also State Grp. Indus. (USA) Ltd. v. Murphy & Assocs. Indus. Servs., Inc.*, 878 N.E.2d 475, 479 (Ind. Ct. App. 2007) ("Neither a criminal conviction nor proof beyond a reasonable doubt is required to trigger the Crime Victims Statute."). If the legislature had intended to require a criminal conviction to avoid the immunity defense, it would have said so in section 670.4(12). *See* Iowa Code § 137C.10(3) (authorizing suspension of a license if "[t]he person conducts an activity constituting a criminal offense in the hotel and is convicted of a serious misdemeanor or a more serious offense as a result"). We will not amend the statute to broaden the immunity in the guise of interpretation.

Alternatively, the City argues the parents must prove the criminal offense exception to immunity beyond a reasonable doubt. The City contends a civil finding that an employee or officer's acts and omissions constitute a criminal offense will subject individuals who are not parties in the lawsuit to criminal liability without due process protections. That is untrue. The state may only impose criminal sanctions through a criminal prosecution and conviction with attendant heightened due process protections. Given the differing burden of proof, the state could not use a judgment on a jury finding in this civil action to establish guilt in a criminal prosecution. *Cf. Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 27 (Iowa 2012) (reviewing circumstances under which an adjudication is not given preclusive effect in subsequent proceedings, including procedural opportunities available only in the second action). The City is correct that the parents must prove a City employee committed manslaughter. The plain language of section 670.4(12) limits the exception to the immunity to an "act or omission *of an officer or employee of the municipality* [that] constitutes . . . a criminal offense." Iowa Code § 670.4(12) (emphasis added).

Nevertheless, to avoid the immunity defense, the parents need only prove by a preponderance of the evidence that a City employee or officer committed the criminal act causing injury. This is a civil action for money damages. The civil burden of proof applies. The City cites no case from any jurisdiction holding that a criminal-act exception to civil immunity must be proven beyond a reasonable doubt. The higher standard applies in criminal cases because the stakes are higher upon a conviction—the loss of liberty through imprisonment, the numerous collateral consequences, and the stigma of a criminal record.

Iowa law allows civil and criminal remedies to be pursued independently. *See id.* § 611.21 ("The right of civil remedy is not merged in a public offense and is not restricted for other violation of law, but may in all cases be enforced independently of and in addition to the punishment of the former."); *id.* § 701.10 ("The fact that one may be subjected to a criminal prosecution in no way limits the right which anyone may have to a civil remedy."). Our tort law routinely allows proof of criminal offenses by a preponderance of the evidence to recover damages in civil cases. *See, e.g., Jones v. Blair*, 387 N.W.2d 349, 352 (Iowa 1986) ("A violation of statutory rules of the road constitutes negligence per se . . . ."). The reason to require proof beyond a reasonable doubt does not apply in a civil action:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.

*In re Winship*, 397 U.S. 358, 363–64, 90 S. Ct. 1068, 1072, 25 L. Ed. 2d 368, 375 (1970). We reiterate the timeless principles underlying the differing burdens of proof in civil and criminal proceedings:

> "The rule of evidence requiring proof beyond a reasonable doubt is generally applicable only in strictly criminal proceedings. It is founded upon the reason that a greater degree of probability should be required as a ground of judgment in criminal cases, which affect life or liberty, than may safely be adopted in cases where civil rights only are ascertained. It often happens that civil suits involve the proof of acts which expose the party to a criminal prosecution. Such are proceedings under the statute for the maintenance of bastard children, proceedings to obtain a divorce for adultery, actions for assaults, actions for criminal conversation or for seduction, and others which might be named. And in such actions, which are brought for the

> determination of civil rights, the general rule applicable to civil suits prevails, that proof by a reasonable preponderance of the evidence is sufficient."

*United States v. Regan*, 232 U.S. 37, 49, 34 S. Ct. 213, 217, 58 L. Ed. 494, 499 (1914) (citation omitted) (quoting *Roberge v. Burnham*, 124 Mass. 277, 278 (1878)).

Accordingly, on remand, the district court shall instruct the jury using the civil preponderance-of-the-evidence standard to determine whether the acts or omissions of a City employee or officer constitute manslaughter, a criminal offense avoiding the immunity defense in Iowa Code section 670.4(12).

**VII.  Disposition.**

We reverse the district court's granting of summary judgment because a violation of the administrative rules and the crime of manslaughter relied upon by the parents are criminal offensives exempting them from the immunity provided by Iowa Code section 640.12(4).  We affirm the district court's dismissal of the due process claim because after submission of this case to our court the parents withdrew their argument concerning the claim.  Therefore, we affirm in part and reverse in part the decision of the district court granting summary judgment to the City.  We remand the case back to the district for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Waterman, J., Cady, C.J., and Mansfield, J., who concur in part and dissent in part.

**WATERMAN, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. I join the majority opinion except for division IV. I disagree with the majority's conclusion that a violation of pool regulations promulgated by the Iowa Department of Public Health (department) constitutes a "criminal offense" defeating the statutory immunity provided under Iowa Code section 670.4(12) (2009).[7] The majority reaches the wrong conclusion by relying on the wrong statute, Iowa Code section 135.38, and a tortured analysis of ancient legislative history. I would instead affirm the district court's summary judgment ruling based on the operative statutory text and our rules of interpretation, as the court of appeals did in *Larsen v. City of Reinbeck,* No. 09–0613, 2009 WL 3064658, at *2 (Iowa Ct. App. Sept. 17, 2009) (affirming summary judgment dismissing claims arising out of accidental drowning at city pool). The legislature provided separate remedies in separate chapters, and Iowa Code chapter 135I governs swimming pools. The legislature enacted chapter 135I in the same bill as the corresponding immunity provision, section 670.4(12), and restricted liability claims in order to promote aquatic recreational opportunities for Iowans. *See* 1989 Iowa Acts ch. 291 (codified at Iowa Code §§ 135I.1–.6, § 25A.14(13), § 613A.4(12) (1991)). As the district court and *Larsen* court concluded, the legislature chose to criminalize only statutory violations, not violations of the department's regulations. *See Larsen,* 2009 WL 3064658, at *2.

---

[7]This provision is now located in Iowa Code section 670.4(1)(*l*) (2015). Unless otherwise noted statutory citations, like in the majority opinion, will be to the 2009 Code.

Our court should not rewrite statutes to alter policy choices made by our elected legislators. The majority opinion will allow unelected bureaucrats to expand criminal and civil liability for lifeguards and pool operators and will make it costlier for cities and schools to keep swimming pools open. Some pools may close as liability insurance costs climb. I invite the legislature to take a fresh look at the scope of tort immunity for municipal swimming pools in light of today's decision.

## I. Additional Facts.

Before these tragic drownings, the City had rented its pool for nighttime events twenty to thirty times a year with the underwater lights left off, without incident. The summary judgment record is silent as to why these teenage boys who could not swim went down the waterslide into the deep end, or why the sports camp operator, the Fellowship of Christian Athletes, failed to inform the City that it was bringing nonswimmers to the pool party.

The immunity provided under section 670.4(12) applies to swimming pools subject to inspection programs. The record establishes the department annually inspected the City's pool before and after the accidental drownings on July 14, 2010. The inspection the year before the drownings noted eight deficiencies: misplaced signs for the lazy river and slide, inadequate records for operations and equipment, an improperly placed water inlet, a gap in a fabric fence, an improperly placed grate under the slides, unfinished floor grading under fenced areas, and unregistered lazy river and waterslides. The City addressed all of these deficiencies within thirty days. The department inspected the pool again that August and noted two deficiencies: a missing slide pad and improperly spaced boundary buoy lines. The department approved a plan to address those deficiencies. The last inspection before the

drowning deaths was August 18, 2009, and noted only a single deficiency: the boundary line buoys were again improperly spaced. None of these inspections raised a concern about water clarity or the underwater lighting.

The department next inspected the pool on July 22, 2010, eight days after the drownings. The inspection revealed six deficiencies: incomplete records on pool chemistry, incomplete records on drain covers, fading paint, insecure ladders, deficient labeling of chemical containers, and a gap near the gate by the lazy river. None of the department's inspections addressed the adequacy of the overhead lighting or water clarity, or the use of underwater lighting. The City never received a citation for murky water or insufficient lighting.

## II. Violations of the Department's Swimming Pool Regulations Are Not Criminal Offenses that Defeat the Statutory Immunity.

The majority opinion rests on a false assumption that the department's swimming pool regulations were promulgated under chapter 135 rather than chapter 135I. The pool regulations at issue,[8] however, indicate they are promulgated under chapter 135I, entitled "Swimming Pools and Spas." So, the majority starts out on the wrong

---

[8]The regulations state:

*Water clarity.* A swimming pool that is less than 8 ft deep shall be closed if the grate openings on the main drain are not clearly visible from the deck. A swimming pool that is 8 ft deep or deeper shall be closed if the main drain is not clearly visible from the deck.

Iowa Admin. Code r. 641—15.4(2)(*c*) (135I).

Artificial lighting shall be provided at a swimming pool which is to be used at night or which does not have adequate natural lighting so that all portions of the swimming pool, including the bottom and main drain, may be clearly seen.

Iowa Admin. Code r. 641—15.4(4)(*m*)(2)(1) (135I).

foot. This matters because chapter 135 includes a provision that criminalizes violations of "rules of the department," *see* Iowa Code § 135.38, while chapter 135I does not. To the contrary, chapter 135I criminalizes violations of the statute alone, not the implementing regulations promulgated by the department. *Id.* § 135I.5. To get to its desired result, the majority concludes that the "rules" referenced in section 135.38 include any rules the department issues, not only under chapter 135 but also any other chapter administered by the department. The problem is that each relevant, subsequent chapter contains its own penalty provision, and the majority's interpretation of section 135.38 results in redundancies and conflicts between the statutes. By contrast, the interpretation used by the *Larsen* court and district court harmonizes the statutes without any redundancy or conflict.

*Larsen* is directly on point. *See Larsen*, 2009 WL 3064658, at *1. In *Larsen*, a minor child drowned at a swimming pool owned and operated by a municipality. *Id.* The parents of the child argued, as plaintiffs do here, that under section 135.38, violations of the rules of the department are "generally punishable as simple misdemeanors in its area of authority, including that involving public swimming pools under Chapter 135I." *Id.* at *2. The *Larsen* court disagreed, holding that section 135.38 only criminalizes violations of "this chapter" and "rules of the department," that is, the rules implementing chapter 135,[9] not rules promulgated under separate chapters such as 135I. *Id.* The *Larsen* court noted the other chapters administered by the department contain separate penalty provisions. *Id.*; *see, e.g.,* Iowa Code § 136B.5 ("A person

---

[9]Chapter 135 contains a number of specific programs administered by the department, such as lead abatement, newborn hearing screening, and treatment of problem gamblers.

who violates a provision of this chapter is guilty of a serious misdemeanor."); *id.* § 136C.4(1) ("It is unlawful to operate or use radiation machines or radioactive material in violation of this chapter or of any rule adopted pursuant to this chapter. Persons convicted of violating a provision of this chapter are guilty of a serious misdemeanor."). The *Larsen* court concluded that section 135.38 was inapplicable to swimming pool regulations promulgated under chapter 135I. *Larsen*, 2009 WL 3064658, at *2. I reach the same conclusion.

The majority fails to address the conflicts between statutory provisions resulting from its interpretation. For example, Iowa Code chapter 136C governs radiation machines and radioactive materials and is administered by the department. Section 136C.4 provides that a violation of a department rule is a *serious* misdemeanor, while under section 135.38 it would merely be a *simple* misdemeanor. Chapter 136D governs tanning facilities and authorizes the department to adopt rules. Iowa Code § 136D.7. The penalty provision, section 136D.9,[10] allows only a civil penalty for violating the department's rules, while the majority's interpretation of section 135.38 adds a criminal misdemeanor penalty. We could avoid these conflicts between the statutes by construing the penalty provision in each chapter to apply to rules promulgated by the department under that chapter. We are to favor interpretations that avoid conflicts between statutes. *See K & W Elec., Inc. v. State*, 712 N.W.2d 107, 114–15 (Iowa 2006).

The majority also fails to address the redundancies that result from its interpretation of section 135.38. For example, chapter 138, administered by the department, governs health inspections of migrant

---

[10]Added by 2012 Iowa Acts ch. 1113, § 30.

labor camps. Section 138.19 expressly provides that a violation of the department's rules issued under the chapter is a simple misdemeanor. Iowa Code § 138.19. Chapter 139A, also administered by the department, governs reporting requirements for communicable diseases. The penalty provision similarly provides that a violation of the department's rules is a simple misdemeanor. *See id.* § 139A.25(1). Those provisions become surplusage under the majority's interpretation of section 135.38. We are to avoid interpretations that render statutory language superfluous. *See Thomas v. Gavin*, 838 N.W.2d 518, 524 (Iowa 2013) ("Normally we do not interpret statutes so they contain surplusage."); *see also* Iowa Code § 4.4(2) ("The entire statute is intended to be effective.").

No such problems accompany the statutory interpretation of the *Larsen* court and district court, which applied the plain language of the operative provisions, sections 135I.5 and section 670.4(12). The legislature enacted chapter 135I in the same bill that enacted the swimming pool immunity provision in section 670.4(12). 1989 Iowa Acts ch. 291, §§ 1–6, 8. The fact that the legislature created the immunity provision in section 670.4(12) at the same time as the penalty provision in section 135I.5 strengthens my conclusion that those statutes control over section 135.38.

Chapter 135I of the Iowa Code specifically governs the department's regulation of swimming pools and spas. The pool regulations at issue were promulgated under chapter 135I. The penalty provision in this chapter states, "A person who violates a provision of this chapter commits a simple misdemeanor. Each day upon which a violation occurs constitutes a separate violation." Iowa Code § 135I.5. As the *Larsen* court observed, "this provision unambiguously

criminalizes violations of the statute alone. Unlike section 135.38, the provision makes no mention of the implementing rules." *Larsen*, 2009 WL 3064658, at *3 (citation omitted). I agree. The plain language of section 135I.5 does not criminalize violations of the department's rules promulgated under that chapter.

" '[L]egislative intent is expressed by omission as well as by inclusion of statutory terms.' " *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011) (alteration in original) (quoting *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 812 (Iowa 2011)). When the legislature selectively places language in one section and avoids it in another, we presume it did so intentionally. *Id.* Here, section 135.38 includes language criminalizing violations of rules, but section 135I.5 does not. The legislature knows how to criminalize violations of the department's rules. It did so for rules promulgated under chapter 135, but not under chapter 135I.[11] I conclude section

---

[11]Additional chapters of the Iowa Code administered by the department contain penalty provisions specific to each chapter. *See, e.g.*, Iowa Code § 142.11 (providing that a statutory violation is an aggravated misdemeanor), *id.* § 142D.9 (providing civil penalties and injunctive relief for statutory violations), *id.* § 144A.10 (providing that a statutory violation is a serious misdemeanor). These examples reinforce our conclusion that by 2009 the legislature had enacted separate penalty provisions for each chapter administered by the department, which, like section 135I.5, are interpreted independently of the penalty provision in section 135.38.

Other statutes governing public health and safety standards administered by a different agency, the Iowa Department of Inspections and Appeals, further illustrate the legislature's contemporary practice of making separate policy choices for penalties under each chapter. These include chapters 137C (Hotel Sanitation Code), 137D (Home Food Establishments), and 137F (Food Establishments and Food Processing Plants). Each chapter has its own unique penalty provision. Section 137C.28 provides that a statutory violation is a simple misdemeanor, without criminalizing a violation of a rule promulgated under that chapter. *Id.* § 137C.28 ("A person who violates a provision of the Iowa hotel sanitation code shall be guilty of a simple misdemeanor. Each day upon which a violation occurs constitutes a separate violation."). By contrast, section 137D.3 criminalizes both violations of the statute and the department rules. *Id.* § 137D.3 ("A person who violates a provision of this chapter, including a standard adopted by departmental rule, . . . is guilty of a simple misdemeanor."). Yet, another permutation

135I.5 is the more specific penalty provision and governs this case. *See* Iowa Code § 4.7 (stating a specific provision controls over a conflicting general provision); *see also Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) ("[T]he more specific provision controls over the general provision."). If the legislature wanted to criminalize violations of pool regulations, it would have said so in section 135I.5. It did not.

We recently interpreted related statutes in *Shumate v. Drake University*, 846 N.W.2d 503, 516 (Iowa 2014). In *Shumate*, the plaintiff urged us to recognize an implied private right of action for service dog trainers to sue for money damages under Iowa Code chapter 216C. *Id.* at 505. We declined to do so, noting the legislature expressly provided for a private right to sue under chapters 216 and 216E, but not in chapter 216C. *Id.* at 512. We stated, "These closely related chapters demonstrate that when the legislature 'wished to provide a private damage remedy, it knew how to do so and did so expressly.'" *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S. Ct. 2479, 2487, 61 L. Ed. 2d 82, 93 (1979)). In those chapters, as here, the legislature chose to set forth differing and specific remedy provisions for each chapter. Specifically, the legislature expressly provided that under chapter 135, violations of department rules are simple misdemeanors, while under chapter 135I, it expressly criminalized only violations of the statute, not the department's rules. *Cf.* Iowa Code § 135.38, *with id.* § 135I.5. The majority fails to confront the foregoing statutory analysis.

---

is found in section 137F.17, which provides only a civil penalty for a violation of the statute or a rule issued under that statute, without a criminal penalty. *Id.* § 137F.17 ("A person who violates this chapter or rules adopted pursuant to this chapter shall be subject to a civil penalty of one hundred dollars for each violation.").

The majority's interpretation also undermines the purpose of the immunity in section 670.4(12), which is to reduce the litigation risk inherent in aquatic recreation and thereby encourage cities, counties, and schools to open and operate swimming pools. *See Baker v. City of Ottumwa,* 560 N.W.2d 578, 582 (Iowa 1997) (noting that "the legislature enacted the swimming pool exemption 'to foster community recreational activities' "). We are to interpret statutes to effectuate, not undermine, the legislative objective.

> In determining legislative intent and reaching a reasonable construction that will give effect to, rather than defeat, that intent, we consider the statutory objective the legislature desired to accomplish as well as the evils and mischiefs it sought to remedy.

*McCracken v. Iowa Dep't of Human Servs.,* 595 N.W.2d 779, 784 (Iowa 1999). We have "characterized statutory immunities as having a broad scope and we have given words used in such immunity statutes a broad meaning." *Cubit v. Mahaska County,* 677 N.W.2d 777, 784 (Iowa 2004) (collecting cases broadly applying immunity provisions of section 670.4); *see also Walker v. Mlakar,* 489 N.W.2d 401, 405 (Iowa 1992) (interpreting narrowly statutory exception to common law immunity). "Immunity is based upon the desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " *Graber v. City of Ankeny,* 656 N.W.2d 157, 160 (Iowa 2003) (quoting *Goodman v. City of LeClaire,* 587 N.W.2d 232, 237 (Iowa 1998)). The majority's interpretation effectively second-guesses the legislative policy choice to limit recovery rights in order to encourage aquatic recreational opportunities. That is not our court's role. The legislature's policy choice was reasonable—the immunity in section 670.4(12) is conditioned

upon submission to pool safety inspections with the inspectors empowered to shut down pools operating in violation of the department's rules. *See* Iowa Code § 135I.6.

I share the City's concern that criminalizing the department's rules regulating swimming pools undermines the liability protection in section 670.4(12). Liability risk has already led to the disappearance of three-meter diving boards from most public swimming pools. *See* Greg Sobo, Note, *Look Before You Leap: Can the Emergence of the Open and Obvious Danger Defense Save Diving from Troubled Waters?*, 49 Syracuse L. Rev. 175, 176 (1998) (noting "the solemn reality that diving, both as a recreational activity and as an amateur sport, is becoming extinct because [of] tort law"). The department's pool regulations are broad in scope and extremely detailed, and a rule violation could be found in many tort claims.[12]

---

[12]The majority's interpretation criminalizes a large number of technical violations of a detailed regulatory scheme. For example, one rule provides, "Soap shall be available at each lavatory and at each indoor shower fixture." Iowa Admin. Code r. 641—15.4(5)(*e*) (135I). Should pool administrators face criminal charges and lose tort immunity for failure to provide soap? The regulations also specify measurements for various safety measures. Floats marking float lines need to be no more than five feet apart, within twelve inches of the boundary between shallow and deep water. *Id.* r. 641—15.4(4)(*i*)(3) (135I). If float lines become slightly spread out from each other or the line drifts an inch too far in the course of ordinary use, have the pool operators committed a crime and lost statutory immunity? Likewise, depth markers must be within three feet of the edge of a pool, no more than twenty-five feet from each other, and at least four inches in height. *Id.* r. 641—15.4(4)(*j*) (135I). Should a number misplaced by a half inch be a criminal offense?

The majority's interpretation also leads to a strange inconsistency in the enforcement of pH levels in a swimming pool. The regulations state, "The pH of swimming pool water shall be 7.2 to 7.8. An inspection agency may require that a swimming pool be closed if the pH is less than 6.8 or greater than 8.2." *Id.* r. 641—15.4(2)(*b*) (135I). If we follow the majority, it is a misdemeanor if the pH level is below 7.2 or above 7.8. Yet, an inspector may not close the pool for the health and safety of swimmers unless the pH strays to less than 6.8 or greater than 8.2. Why should pool administrators be subject to criminal penalties and tort liability for a pool with a pH that temporarily reaches 7.1 or 7.9 while the pool is allowed to remain open?

Section 670.4 provides fifteen specific immunity provisions, including the one at issue for state-inspected swimming pools:

> The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability.
>
> . . . .
>
> 12. A claim related to a swimming pool or spa as defined in section 135I.1 which has been inspected by a municipality or the state in accordance with chapter 135I, or a swimming pool or spa inspection program which has been certified by the state in accordance with that chapter, whether or not owned or operated by a municipality, *unless the claim is based upon an act or omission of an officer or employee of the municipality and the act or omission constitutes actual malice or a criminal offense.*

Iowa Code § 670.4(12) (emphasis added). Plaintiffs do not allege the acts or omissions of the City's employees constituted actual malice. The majority broadly interprets the criminal-offense exception, contrary to our rule of interpretation that exceptions to statutory immunity provisions are narrowly construed. *See Cubit*, 677 N.W.2d at 784; *Walker*, 489 N.W.2d at 405.

We addressed the scope of the immunity for state-inspected swimming pools in *Baker*, 560 N.W.2d at 581–83, a case the majority fails to cite, much less analyze. In *Baker*, the City of Ottumwa owned and operated a municipal water park that had featured a "200' Speed Slide" with an eighty-foot, near-vertical plunge. *Id.* at 581. Joe Baker, age nineteen, rapidly descended the slide just as Aaron Dannull, age twelve, stuck his foot onto the bottom of the flume to test the water temperature. *Id.* Dannull was standing in an unauthorized area; "the lifeguard stationed at the bottom of the slide evidently was not paying attention." *Id.* Dannull's heel struck Baker's eye, fracturing his orbital

bone. *Id.* Baker sued the City, which moved for summary judgment based on section 670.4(12). *Id.* The district court granted the City's motion, and Baker proceeded to trial against Dannull. *Id.* The jury found Dannull at fault, Baker free of fault, and rejected Dannull's defense that the City's fault was the sole proximate cause of Baker's damages. *Id.* Baker appealed, and Dannull cross-appealed, both contending the jury should have been allowed to assign a percentage of fault to the City. *Id.*

We relied on the broad language of section 12 to hold the City's immunity applied to negligent lifeguards:

> Baker's first argument—that the exemption relates to health standards, not negligent lifeguards—is defeated by the broad language of section 670.4(12). By its very terms, the exemption applies to any "act or omission" that falls short of actual malice or crime. This language precludes Baker's attempt to narrow the statute's focus. Nothing in the statute immunizes negligence in the performance of pool inspections while preserving claims against negligent lifeguards. Clearly the suit before us fits the broad classification of "claim relating to a swimming pool," and the district court was correct in so ruling.

*Id.* at 582 (citations omitted) (quoting Iowa Code § 670.4(12)). We rejected Baker's constitutional challenge, concluding the legislature had a rational basis to deny recovery to victims of swimming pool accidents, but not those injured in other forms of recreation. *Id.* We affirmed the district court's summary judgment for the City. *Id.* at 582–83. The broad liability protection our court recognized in *Baker* is now eviscerated by the majority's holding that violations of pool regulations defeat the statutory immunity.

Another problem with the majority's interpretation is that it exposes municipal lifeguards and pool managers to criminal charges for a violation of the department's regulations. *See* Iowa Code § 903.1(1)(*a*)

(allowing incarceration up to thirty days upon conviction of a simple misdemeanor). We recently reiterated that we must consider the consequences of different interpretations when construing a statute. *State v. Hoyman*, 863 N.W.2d 1, 13 (Iowa 2015); *see also* Iowa Code § 4.6(5) (allowing the court to consider "[t]he consequences of a particular construction"). To impose criminal sanctions based on the ambiguous language of section 135.38 would violate the rule of lenity, "which directs that criminal statutes are to be strictly construed in favor of the accused." *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011).

Instead of employing our usual methods of statutory interpretation, the majority relies on the legislative history of chapter 135 in 1923 and 1933. It is true that "[w]e also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent." *Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010). However, our starting place is the text of the statute. *In re Marriage of Thatcher*, ___ N.W.2d ___, ___ (Iowa 2015). We next apply our rules of interpretation, particularly those codified by the legislature to guide the interpretation of its enactments. *See* Iowa Code § 4.4. Only then should we turn to legislative history. The majority pays lip service to these general rules of statutory interpretation, yet relies solely on that legislative history of chapter 135 from over eight decades ago.

In my opinion, that legislative history fails to support the majority's interpretation. The legislature amended the statute into its current form in the 1923–1924 extraordinary session. In the 1924 Iowa Code, what is now section 135.38 was located in chapter 105 of Title VII and read in full:

> Any person who knowingly violates any provision of this chapter, or of the rules of the department, or any lawful order, written or oral, of the department or of its officers, or authorized agents, shall be guilty of a misdemeanor.

Iowa Code § 2217 (1924). Notably, each of the subsequent chapters within Title VII had its own penalty provision.[13] For example, section 2279 specifically provided that a violation of the rules of the department was a misdemeanor. That language would be surplusage if section 2217 applied to all rules promulgated by the department. The majority overlooks that flaw in its historical analysis.

There are other flaws in its theory being ignored by the majority. Specifically, in Title VIII of the 1924 Iowa Code regulating particular professions, chapter 115 contained a penalty provision stating, "Any person violating any provision of this *or the following chapters* of this title shall be fined . . . or be imprisoned in the county jail." *Id.* § 2522. None of the subsequent chapters in Title VIII contained its own penalty provision, unlike Title VII. Thus, the legislature in 1924 knew how to

---

[13]*See* Iowa Code § 2279 (ch. 108, Contagious and Infectious Diseases, "Penalty. Any person who knowingly violates any provision of this chapter, or of the rules of the state department or the local board, or any lawful order, written or oral, of said department or board, or of their officers or authorized agents, shall be guilty of a misdemeanor."); *id.* § 2316 (ch. 109, Venereal Diseases, "Penalty. Any person violating any of the provisions of this chapter shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for a period not to exceed six months, or by both such fine and imprisonment."); *id.* § 2350 (ch. 110, Disposal of Dead Bodies, "Penalty. Any person who shall violate any provision of this chapter shall be fined not less than five dollars nor more than one hundred dollars, or be imprisoned not more than thirty days in the county jail, or be punished by both such fine and imprisonment."); *id.* § 2361 (ch. 111, Dead Bodies for Scientific Purposes, "Penalties. Any person who shall receive or deliver any dead body of a human being knowing that any of the provisions of this chapter have been violated, shall be imprisoned in the penitentiary not more than two years, or fined not exceeding twenty-five hundred dollars, or both."); *id.* § 2383 (ch. 113, Maternity Hospitals, "Penalty. Any person violating any of the provisions of this chapter or making any false entry on the register required to be kept by this chapter shall be punished by a fine of not more than two hundred fifty dollars, or by imprisonment in the county jail not more than six months, or by both such fine and imprisonment.").

enact specific penalty provisions for each chapter when it chose to or alternatively provide that the penalty provision in the first applied to subsequent chapters within the same title. I conclude from this comparative analysis of Title VII and Title VIII that the 1924 version of section 135.38, section 2217, criminalized violations of rules promulgated under that chapter alone. *See Shumate*, 846 N.W.2d at 512–13 (using comparative analysis of related statutes to determine legislative intent based on selective placement of operative language).

If the legislature wanted section 135.38 to criminalize violations of all department rules, including those promulgated under other chapters, it could have added the phrase, "or the following chapters," as it did in section 2522 in 1924. The omission of that phrase in section 135.38 tells us that provision criminalizes only the violation of "the rules of the department" promulgated under chapter 135, not other chapters.

The majority next relies on an amendment the legislature made to the statute in 1933 regarding rules for cosmetology. Iowa Code § 2217 (1935). Cosmetology was covered in a separate chapter of the Code, so the majority draws an inference that section 2217 was meant to apply across multiple chapters. Whatever force that inference might have had then was eliminated when the legislature amended the statute to its current form in 1976 to remove the reference to cosmetology and barbering as part of a general overhaul of Iowa's criminal code. 1976 Iowa Acts ch. 1245, ch. 4, § 137. The more telling legislative history, ignored by the majority, is the simultaneous enactment in 1989 of the controlling statutory provisions specifically governing swimming pools and immunity for their operation, sections 135I.5 and 670.4(12). 1989 Iowa Acts ch. 291, §§ 5, 8. Reading those provisions together with section 135.38 and applying the rule of section 4.7 (the specific controls

over the general), in my view, trumps the conflicting inferences to be drawn from the evolving and murky legislative history of the general language in section 135.38.

Finally, the majority relies on the history of the provision in chapter 135 that authorizes the department to establish rules:

[T]he "Iowa Department of Public Health" . . . shall:

. . . .

13. Establish, publish, and enforce rules *not inconsistent with law* for the enforcement of the provisions of chapters 125 and 155, and Title IV, subtitle 2, excluding chapter 146 and for the enforcement of the various laws, the administration and supervision of which are imposed upon the department.

Iowa Code § 135.11(13) (2009) (emphasis added).[14]

Plaintiffs never cited or relied on this provision in district court or in this appeal. The majority draws inferences from the timing of its enactment that preceded the enactment of chapter 17A, the Iowa Administrative Procedure Act. Notably, however, the majority overlooks the limiting principle built into this enabling provision: the rules enacted by the department must not be "inconsistent with law." *Id.* Nothing in the provision itself authorizes the department to expand criminal liability without legislative authorization. Certainly, the provision does not authorize the department to issue a rule in conflict with a statute the department administers.[15] Here, the controlling statute, section 135I.5,

---

[14]This provision is now codified at section 135.11(12) (2015).

[15]We have said:

Agency rules are ordinarily given the force and effect of law, provided they are reasonable and consistent with legislative enactments. However, agencies have no inherent power and [have] only such authority as [they are] conferred by statute or is necessarily inferred from the power expressly granted. To be valid, a rule adopted by an agency must be within the scope of powers delegated to it by statute. When

imposes criminal liability solely for statutory violations, not rule violations. The majority's interpretation allows the department to expand criminal liability by rule beyond what the legislature authorized and thereby defeat the immunity protection the legislature intended.

### III. Negligent Supervision Claim.

The majority fails to address another issue in plaintiffs' appeal: whether the statutory immunity applies to negligent supervision claims. The district court correctly ruled that such claims are subject to the immunity in section 670.4(12), and I would affirm that ruling.

---

rules adopted by an administrative agency exceed the agency's statutory authority, the rules are void and invalid.

*Wallace v. Iowa State Bd. of Educ.*, 770 N.W.2d 344, 348 (Iowa 2009) (alterations in original) (citations omitted) (internal quotation marks omitted); *see also Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 764 (Iowa 2009) ("[R]egulations are required to be consistent with the underlying broader statutory enactment."); *Dunlap Care Ctr. v. Iowa Dep't of Soc. Servs.*, 353 N.W.2d 389, 397 (Iowa 1984) ("Rules which contravene statutory provisions or exceed an agency's statutory authority are invalid."); *Sorg v. Iowa Dep't of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978) ("Adoption of administrative rules which are at variance with statutory provisions or which amend or nullify legislative intent exceeds the Department's authority."); *Iowa Dep't of Revenue v. Iowa Merit Emp't Comm'n*, 243 N.W.2d 610, 615 (Iowa 1976) ("[T]he plain provisions of the statute cannot be altered by an administrative rule or regulation . . . ."). The plaintiffs point to the general authorization the legislature gives agencies in section 17A.22, as well as the department's authority to promulgate rules to implement chapter 135I found in section 135I.4(5). We have said that a general authorization of power "does not grant to an administrative agency unlimited power to regulate matters within the agency's expertise." *Wallace*, 770 N.W.2d at 348. These general grants of authority do not allow the department to create new crimes not authorized by the general assembly.

In *Gartner v. Iowa Department of Public Health*, we held the department lacked interpretive authority as to the vital records statute, noting the "legislature did not expressly authorize the Department to interpret section 144.13(2)." 830 N.W.2d 335, 343 (Iowa 2013); *but see Birchansky Real Estate, L.C., v. Iowa Dep't of Pub. Health*, 737 N.W.2d 134, 138 (Iowa 2007) (holding department had interpretive authority as to certificate-of-need statute, Iowa Code § 135.62(2)(*d*), based on rulemaking authority in section 135.72(1) to enable the department to implement that provision). I conclude, based on the more recent precedent, that the legislature did not vest the department with authority to interpret section 135I.5. Accordingly, we owe no deference to the department's interpretation. *See Gartner*, 830 N.W.2d at 343–44.

Plaintiffs rely solely on the dissenting opinion in *Dang ex rel. Dang v. Des Moines Cmty. Sch. Dist.*, No. 08–1578, 2009 WL 1708827, at \*2–3 (Iowa Ct. App. June 17, 2009) (Sackett, C.J., dissenting).  In *Dang,* an eleven-year-old child suffered permanent brain damage after nearly drowning at a pool party for sixth graders held in Hoover High School's swimming pool.  *Id.* at \*1 (majority opinion).  The child's parents sued, alleging that the school district was grossly negligent in supervising the children, and the district court granted the district's motion for summary judgment based on section 670.4(12).  *Id.*  The dissent concluded that *Baker* was distinguishable because the claim in *Dang* was not about the safety of the pool itself, but turned on the negligence of the school in allowing the child to enter the pool without adequate swimming skills.  *Id.* at \*3 (Sackett, C.J., dissenting).  The majority, however, concluded:

> Clearly the suit before us, like that in *Baker,* fits the broad classification of a "claim relating to a swimming pool."  The plaintiffs' attempts to distinguish *Baker* from the facts presented here are unavailing.  The district court was therefore correct in concluding the defendants were immunized from the liability imposed by section 670.2 under the exemption contained in section 670.4(12).

*Id.* at \*2 (majority opinion) (footnote omitted) (citations omitted).  I agree with the *Dang* majority that *Baker* is dispositive.  Section 670.4 is a broad grant of immunity for claims relating to swimming pools intended to encourage community recreation and safety.  *Baker,* 560 N.W.2d at 582.  In *Baker,* we rejected the plaintiff's attempt to distinguish health standards for swimming pools from the negligence of lifeguards.  *Id.*

For all these reasons, I dissent from division IV of the majority opinion.

Cady, C.J., and Mansfield, J., join this concurrence in part and dissent in part.