# IN THE SUPREME COURT OF IOWA

No. 13–1636

Filed December 19, 2014

**NORTHEAST COMMUNITY SCHOOL DISTRICT,**

Appellant,

vs.

**EASTON VALLEY COMMUNITY SCHOOL DISTRICT,**

Appellee.

Appeal from the Iowa District Court for Clinton County, Gary D. McKenrick, Judge.

A school district appeals a summary judgment ruling finding as a matter of law a whole grade sharing agreement entered into by a predecessor school district that merged into the reorganized school district did not bind the reorganized school. **REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Andrew J. Bracken of Ahlers & Cooney, P.C., Des Moines, for appellant.

Brian L. Gruhn of Gruhn Law Firm, Cedar Rapids, for appellee.

**WIGGINS, Justice.**

Prior to a reorganization merging two school districts, one of the two districts entered into a whole grade sharing agreement with a third district. On a motion for summary judgment filed by the reorganized school district, the district court found as a matter of law the whole grade sharing agreement did not bind the reorganized school district. On appeal, we find the whole grade sharing agreement can bind the reorganized school district. Accordingly, we reverse the judgment entered by the district court in favor of the reorganized district and remand the case back to the district court for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

This case involves three small school districts, two of which reorganized into one new school district, giving rise to the present litigation. Northeast Community School District (Northeast), East Central Community School District (East Central), and Preston Community School District (Preston) were contiguous school districts located in Clinton County and Jackson County. Beginning in 1986, the three school districts periodically had discussions regarding a possible reorganization and merger or whole grade sharing agreements between two or more of the districts.

In October 2009, Northeast and East Central held a joint board of education meeting to discuss the possibility of entering into a whole grade sharing agreement. By June 2010, the school boards of Northeast and East Central agreed to begin the process required for a whole grade sharing agreement, and they held public hearings on the matter. On June 23, East Central and Northeast executed a one-way whole grade sharing agreement (Agreement). The Agreement provided East Central

would send its seventh through twelfth grade students to Northeast for all classes and extracurricular activities. In exchange for Northeast taking these students, East Central agreed to provide transportation to its students to the neighboring high school, pay the students' tuition, and pay a portion of its teacher salary supplement funds to Northeast. The tuition was approximately ninety percent of the state aid East Central received for the students at issue. The two school districts also entered into a facility improvement program agreement on the same day, wherein East Central agreed to pay a portion of its local option sales tax to Northeast to benefit the East Central students attending Northeast. The Agreement became effective at the start of the 2011–2012 school year.

The Agreement was to run for three years and renew each year thereafter, with a three-year term in effect at all times. If either school board wanted to terminate the Agreement, it could give notice no later than December 15 and the Agreement would terminate at the end of the third school year following the notice, or the parties could mutually agree to terminate the contract at the end of any school year. In August 2011, the districts renewed and amended the Agreement to include "successors" of East Central in the Agreement.

At the same time East Central and Northeast were discussing and entering into the Agreement, citizens from Preston and East Central began the process to reorganize their districts and merge the districts together. On May 3, 2010, the citizens delivered a petition for the reorganization of Preston and East Central to the Mississippi Bend Area Education Agency (AEA). The AEA held a public hearing on the petition on June 16. At the public hearing, the AEA was told East Central and Northeast had recently held public hearings on the whole grade sharing

agreement and were in the process of approving an agreement between the districts. At the conclusion of the public hearing, the AEA approved a public vote on the petition for reorganization. Due to litigation between East Central and the AEA challenging the validity of the petition and its process, the residents did not vote on the reorganization petition until September 11, 2012, during the second year of the Agreement. The reorganization passed with a very slim majority in the East Central district and an overwhelming majority in the Preston district. The reorganization created a new school district called Easton Valley Community School District (Easton). Sometime between September and December 14, Easton residents elected a new school board, as is required by Iowa Code section 275.25 (2013). The new board began undertaking the tasks necessary to manage Easton.

On December 14, the Easton school board sent a notification of cancellation of the Agreement to the superintendent of Northeast. The letter stated that Easton reviewed the Agreement and determined that because they were not a party to the Agreement, when East Central ceased to exist the Agreement was null. Further, Easton used this letter as a notice of intent to cancel the Agreement as well, while still asserting the Agreement did not apply to Easton.

Because of this communication, Northeast filed a petition for declaratory action and mandamus in February 2013. Northeast asserted Easton was a successor to East Central and therefore was bound to the contractual obligation of East Central that remained after the reorganization. Pursuant to Iowa Code section 275.24, the reorganization became effective July 1. In August, it became clear to Northeast that Easton intended to breach the Agreement and Northeast

filed an amendment to its petition alleging repudiation of the Agreement and sought damages.

Both parties filed motions for summary judgment in the district court. In its motion, Northeast claims Easton assumed the liability of East Central after the merger of East Central and Preston. In its motion, Easton claims as a matter of law East Central did not have the ability to bind Easton as its successor corporation. Easton also claimed in its motion: (1) If the Agreement is binding, the court lacks subject matter jurisdiction because the Agreement mandates binding arbitration; (2) the Agreement is not binding because Northeast has unclean hands; (3) the doctrine of impossibility excuses Easton's nonperformance; and (4) Northeast unreasonably assumed the risk and failed to mitigate its damages and is barred from recovery.

The district court granted summary judgment for Easton. The district court determined as a matter of law that both the Agreement and the reorganization were valid. However, the district court also found the two were in direct conflict and the East Central school board did not have the ability to bind Easton as its successor corporation. Northeast appeals.

**II. Issue.**

We must determine if the Agreement may be binding on Easton. On appeal, the only argument made by Easton to affirm the district court's ruling is that as a matter of law East Central did not have the ability to bind Easton as its successor corporation.

Our cases allow us to affirm the district court on any basis argued by the appellee in the district court and *urged on appeal by the appellee*. *In re Estate of Voss*, 553 N.W.2d 878, 879 n.1 (Iowa 1996) (citing *Johnston Equip. Corp. v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992));

*see also Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n*, 394 N.W.2d 375, 378 (Iowa 1986) (stating we may decide issues on appeal not reached by the district court where they have been raised in the district court and fully briefed and argued by the parties on appeal). In its brief, Easton did not argue the four alternative grounds for summary judgment as additional means to affirm the district court's grant of summary judgment. Therefore, we will not reach the alternative grounds not urged on appeal, but argued by Easton in the district court.

### III.  Scope of Review.

We review cases resolved by the district court on summary judgment for correction of errors at law. *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006). Summary judgment is appropriate where there are "no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005) (internal quotation marks omitted). If the record shows the conflict only "concerns the legal consequences of undisputed facts" the matter can be resolved on summary judgment. *Id.* (internal quotation marks omitted). "In determining whether summary judgment is proper, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact." *Kragnes*, 714 N.W.2d at 637.

### IV.  Analysis.

**A.  Generally.** In Iowa, public agencies are able to enter into contracts with one another pursuant to a 28E agreement. Iowa Code ch. 28E. The purpose of a 28E agreement is to "permit state and local governments in Iowa to make efficient use of their powers by enabling

them to provide joint services and facilities with other agencies and to cooperate in other ways of mutual advantage." *Id.* § 28E.1. School districts, as a political subdivision of the state, fall under the definition of a public agency for the purposes of a 28E agreement. *See id.* § 28E.2(2); *see also id.* § 274.1 ("Each school district shall continue a body politic as a school corporation, unless changed as provided by law, and as such may sue and be sued, hold property, and exercise all the powers granted by law . . . ."). It is under the authority given by chapter 28E that East Central and Northeast were able to enter into the whole grade sharing agreement. *See generally* Iowa Department of Education, *District Reorganization, Dissolution, and Sharing Guide* (Sept. 2014), *available at* https://www.educateiowa.gov/sites/files/ed/documents/Reorg%20 Guide%202014.pdf.

**B. Whole Grade Sharing Agreements.** Whole grade sharing is purely statutory and integrates several sections of the Iowa Code. *See* Iowa Code § 256.13 (permitting districts to enter into agreements allowing pupils to take courses in a district outside their residence); *id.* § 280.15 (allowing joint employment and sharing); *id.* § 282.7 ("The board of directors of a school district by record action may discontinue any or all of grades seven through twelve and negotiate an agreement for attendance of the pupils enrolled in those grades in the schools of one or more contiguous school districts having accredited school systems."); *id.* §§ 282.10–.11 (defining whole grade sharing agreements and procedure). The most relevant of these is chapter 282. A whole grade sharing agreement "is a procedure used by school districts whereby all or a substantial portion of the pupils in any grade in two or more school districts share an educational program for all or a substantial portion of a school day." *Id.* § 282.10(1). The Agreement at issue in this appeal is a

one-way whole grade sharing agreement because East Central was sending its students to Northeast, but Northeast was not sending students to East Central. *Id.* § 282.10(2) (defining one-way whole grade sharing).

Iowa Code section 282.11 lays out all the procedural requirements for school districts wishing to execute a whole grade sharing agreement. The section requires school districts to announce their intentions to negotiate the sharing agreement at least ninety days before signing the agreement. *Id.* § 282.11(2). The section also allows the public to petition the department of education to conduct a feasibility study on the potential agreement. *Id.* The boards of the districts engaged in negotiations must also hold a public hearing on the agreement at least thirty days before signing the agreement. *Id.* § 282.11(3). Northeast and East Central followed all necessary procedures for entering a whole grade sharing agreement.

The districts also signed the Agreement well in advance of the time line detailed in Iowa Code section 282.10(4), which requires a whole grade sharing agreement be signed "[no] later than February 1 of the school year preceding the school year for which the agreement is to take effect." The whole grade sharing agreement between Northeast and East Central was a valid contract. Further, the only provision in a whole grade sharing agreement the statute specifically addresses is funding of the exchange, *id.* § 282.12; the term of years and termination of the agreement are at the discretion of the boards.

**C.  Can Easton Be Bound by the Agreement?**  We have previously said,

> "A municipal corporation may, by contract, curtail its
> right to exercise functions of a business or proprietary

nature, but, *in the absence of express authority from the legislature*, such a corporation cannot surrender or contract away its governmental functions and powers, and any attempt to barter or surrender them is invalid. Accordingly, a municipal corporation cannot, by contract, ordinance, or other means, surrender or curtail its legislative powers and duties, its police power, or its administrative authority."

*Marco Dev. Corp. v. City of Cedar Falls*, 473 N.W.2d 41, 42 (Iowa 1991) (emphasis added) (quoting 62 C.J.S. *Municipal Corporation* § 139, at 281–82 (1949)). Additionally, in the absence of a statute we do not generally recognize a distinction between municipal corporation and private corporation contract liability. *Allis-Chalmers Corp. v. Emmet Cnty. Council of Gov'ts*, 355 N.W.2d 586, 590–91 (Iowa 1984).

Easton argues two statutes relieve it of its liability because Northeast is required to participate in negotiations of assets and liabilities following reorganization. Easton relies on a statute that provides:

> Between July 1 and July 20, the board of directors of the newly formed school district shall meet with the boards of the *school districts affected* by the organization of the new school corporation, including the boards of districts receiving territory of the school districts affected, for the purpose of reaching joint agreement on an equitable division of the assets of the several school corporations or parts of school corporations and an equitable distribution of the liabilities of the affected corporations or parts of corporations.

Iowa Code § 275.29 (emphasis added). Easton also relies on a statute that states:

> If the boards cannot agree on such division and distribution, the matters on which they differ shall be decided by disinterested arbitrators, one selected by the initial board of directors of the newly formed district, one by each of the boards of directors of the *school districts affected*, and one selected jointly by the boards of directors of contiguous districts receiving territory of the school district affected.

*Id.* § 275.30 (emphasis added).

Easton's reliance on these statutes is misplaced. In prior litigation, a dispute arose as to the meaning of the phrase "school districts affected" in chapter 275. *See Ruthven Consol. Sch. Dist. v. Emmetsburg Cmty. Sch. Dist.*, 382 N.W.2d 136, 139 (Iowa 1986). However, the legislature amended section 275.1. *Id.* (recognizing the legislature defined the phrase "school districts affected" after the dispute in the *Ruthven* case arose). The amendment defined the term "school districts affected" as "the school districts named in the reorganization petition whether a school district is affected in whole or in part." 1984 Iowa Acts ch. 1078, § 1 (codified at Iowa Code § 275(1)(*g*)). The reorganization petition did not name Northeast as a party; thus, it is not a school district affected by the reorganization.

We can find no other statute that requires us to treat the Agreement differently than a contract between two private corporations; thus, we will analyze the contract as we would any other contract. Generally, after a corporation purchases the assets of another, the purchasing corporation

> assumes no liability for the transferring corporation's debts and liabilities. Exceptions arise only in four circumstances: (1) the buyer agrees to be held liable; (2) *the two corporations consolidate or merge*; (3) the buyer is a "mere continuation" of the seller; or (4) the transaction amounts to fraud.

*Pancratz v. Monsanto, Co.*, 547 N.W.2d 198, 200 (Iowa 1996) (emphasis added).

When a city or county merges with another, the consolidation does not alter any liabilities in effect at the time of the election. *See* Iowa Code § 331.249(4) ("The adoption of a charter for a city-county consolidated government does not alter any right or liability of the county or

consolidated city in effect at the time of the election at which the charter was adopted."); *id.* § 373.6(2)(*b*) ("The adoption of the consolidated metropolitan corporation form of government does not alter any right or liability of any participating city in effect at the time of the election at which the charter was adopted."). We see no reason not to apply this principle to school districts because a school district is a political subdivision of this state, just as a city or county is a political subdivision of this state.

The district court correctly found as a general rule that a successor corporation in a merger or consolidation is bound by the contracts of the predecessor corporations. The district court was unable to harmonize the statutes allowing reorganization and whole grade sharing agreements, as once a reorganization occurred it would likely be necessary to terminate the whole grade sharing agreement because it would be unnecessarily costly for the new school district to send its students elsewhere. However, the district court then determined that by voting on the reorganization the citizens had voted that the reorganization was the best way to educate the children.

The district court's decision does not address the fact that the termination or continued existence of the Agreement was not on the ballot, as the petition could not mention an agreement that did not exist until a few days after the AEA approved a public vote on the petition. In addition, the district court turns a blind eye both to the uneven election results in the two communities and the fact that most of the students, at least 150, chose to open enroll at Northeast in the year following the merger rather than attend Easton. There is nothing in the Code or the Agreement prohibiting the continuation of the whole grade sharing agreement after reorganization. The present Agreement is no different

from a contract between East Central and a food provider for its lunchroom services that East Central might have entered into prior to the reorganization. After the reorganization, the reorganized school district would be required to honor the contract, unless the contract provided otherwise.

For these reasons, we find the district court erred by finding as a matter of law Easton was not bound by the Agreement.

**V. Disposition.**

We reverse the summary judgment entered by the district court and remand the case for further proceedings to determine all remaining issues.

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**