# IN THE COURT OF APPEALS OF IOWA

No. 15-0067
Filed April 27, 2016

SARAH LINDEMULDER, DEBORAH LINDEMULDER,
AND DANIEL LINDEMULDER,
    Plaintiffs-Appellants,

vs.

DAVIS COUNTY COMMUNITY SCHOOL DISTRICT,
    Defendant-Appellee, and

RYAN GRINSTEAD, and PATRICK NICOLETTO,
    Defendants.

_____

Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon, Judge.

Plaintiffs appeal the district court's grant of summary judgment to the school district in this lawsuit, alleging liability for the misconduct of school employees. **AFFIRMED.**

Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellants.

Gayla R. Harrison and Nicholas T. Maxwell of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee Davis County Community School District.

Heard by Vogel, P.J., Doyle, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**VOGEL, Presiding Judge.**

Sarah Lindemulder and her parents, Deborah and Daniel, (the Lindemulders) appeal the district court's grant of summary judgment to the Davis County Community School District (the School District). The Lindemulders sued the School District alleging a number of causes of action arising out of Sarah's sexual relationship with Patrick Nicoletto, a high school coach, and Ryan Grinstead, a high school teacher. On appeal the Lindemulders maintain the district court incorrectly concluded, with respect to their claim under Title IX, the School District did not have actual notice of the sexual harassment and abuse Sarah endured at the hands of Grinstead and Nicoletto. They also claim the School District had a fiduciary relationship with Sarah due to her involvement in school activities, and in addition, they claim the School District assumed a duty of care for Sarah and every other student in the school district by virtue of providing teaching and coaching services. They assert the School District should be liable for damages because no teacher or coach reported the abuse as required by the mandatory reporting requirement in Iowa Code sections 232.69–.70 (2011). Finally, they claim Grinstead and Nicoletto were acting within the scope of their employment and their actions were foreseeable as would give rise to the School District's liability under respondeat superior.

**I. Background Facts and Proceedings.**

Neither party asserts the district court misapprehended the pertinent facts of this case in ruling on the School District's motions for summary judgment. We thus rely on the district court's statement of facts, which were undisputed or

presented in the light most favorable to the Lindemulders as the nonmoving parties.

Sarah was a student in her junior and senior years at the School District in the 2007–08 and 2008–09 school years. Grinstead was a math teacher and athletics coach, and Nicoletto was an assistant athletics coach. Sarah engaged in sexual relationships with Nicoletto beginning in the spring of 2008 and with Grinstead beginning in the fall of 2008,[1] both on school premises and off-campus.[2]

With respect to Sarah's relationship with Nicoletto, a parent called Principal Jeffry Graves to report there was a rumor Sarah was involved in an inappropriate relationship with Nicoletto. Basketball Coach Dave Mason also reported a "possible problem" with Sarah and Nicoletto to Principal Graves. Principal Graves called Sarah into his office for a conference, and Sarah denied the rumor, saying someone had misinterpreted something she said in the lunchroom. Principal Graves also asked Nicoletto about the rumor over the phone. Nicoletto told Sarah about the phone call, and he said the impression he

---

[1] Both Nicoletto and Grinstead were convicted of sexual exploitation by a school employee arising out their relationship with Sarah. *See* Iowa Code § 709.15 (2009). However, Nicoletto's conviction was reversed on appeal because he did not meet the definition of a "school employee" under the applicable law at that time. *See State v. Nicoletto*, 845 N.W.2d 421, 432 (Iowa 2014), *superseded by statute*, 2014 Iowa Acts ch. 1114, § 1 (including in the definition of school employee a person who has been issued a coaching authorization).

[2] Sarah asserted she had sexual relations with Grinstead in his classroom, in her mom's home, in his vehicle, at the park, and at Grinstead's home. Sarah asserted she kissed Nicoletto in the high school locker room and had sexual relations with him at his home. She claimed to have been together with Nicoletto one to two times per week and stayed the night at his house once every two to three weeks. Sarah also acknowledges her aunt was aware of her relationship with Nicoletto, but Sarah begged her aunt not to tell her parents about the relationship. Sarah would tell her parents she was staying the night with her aunt or with a friend in order see Nicoletto or Grinstead.

got from Principal Graves was to have Sarah say she made it up. Principal Graves, after this investigation, did not believe Sarah and Nicoletto were involved in an inappropriate or sexual relationship or that Sarah had suffered sexual abuse.

With respect to Sarah's relationship with Grinstead,[3] Superintendent Sam Miller heard a rumor that Sarah and Grinstead were seen at a movie theater together. He asked Principal Graves to investigate. Principal Graves again met with Sarah, this time in the high school counselor's office, and asked her whether there was an inappropriate relationship between her and Grinstead. Sarah again denied a relationship existed and said it was just rumors. Both Principal Graves and the school counselor found Sarah's denial to be credible. Principal Graves then questioned Grinstead in person. Grinstead also denied any relationship, and Principal Graves found the denial credible. Principal Graves reported his investigation results back to Superintendent Miller and to Sarah's mother, and concluded his investigation because he did not believe there was anything else he could do to investigate the rumors.

Track coach Joshua Husted observed what he thought was an inappropriate situation when he saw Sarah going to the third floor during lunch, which is where Grinstead's classroom was located. Husted recalled Sarah's name was brought up at a staff meeting to say she was not to report to the third floor during lunch time. During her senior year, Sarah participated in the state track meet. In the hallway of the hotel where the teams and coaches stayed for

---

[3] Sarah asserts Grinstead had a prior relationship with a student at his previous place of employment, but there was no evidence this information was ever conveyed to Principle Graves or anyone else at the School District.

the state track meet, Husted observed an angry, whispered exchange between Sarah and Grinstead. After witnessing the exchange, Husted told Grinstead that having the conversation was not appropriate. This confrontation made Husted "uneasy." Also during the state track meet, Husted gave Grinstead permission to take Sarah to get a sandwich, and the two were unfortunately involved in a motor vehicle accident. This accident was reported to Principal Graves, and both Principal Graves and Husted informed Sarah's parents. Husted also reported the hotel hallway observation to Principal Graves.

Other school employees who were also aware of a possible inappropriate relationship between Sarah and Grinstead included teacher Nathan Taylor, who Sarah testified saw her and Grinstead holding hands and kissing,[4] and basketball coach Dave Mason, who observed Sarah's vehicle near Grinstead's apartment after a game. Mason told Ginstead that it did not "look good." Neither Taylor nor Mason reported their observations to the School District. Both Nicoletto and Grinstead knew about Sarah's relationship with the other, and neither informed the School District.

Sarah and Grinstead ended their relationship in May 2010, a year after Sarah graduated from high school. The following year, Sarah's sister told Sarah's mother about Sarah's relationship with Grinstead, and the matter was reported to the police. The Lindemulders filed a lawsuit against the School District, Grinstead, and Nicoletto in December 2012, alleging liability for civil damages for the crimes committed, for assault and battery, for violating a duty

---

[4] We note we have no testimony or affidavit from Taylor admitting he witnessed the conduct, only Sarah's testimony that he was present when the conduct between her and Grinstead occurred.

assumed by the School District to protect Sarah, for violating a duty as a fiduciary, for loss of consortium, for violating the mandatory reporting requirements, for lascivious conduct with a minor, and for violating Title IX.

The School District filed two motions for partial summary judgment.[5] The first motion asserted the School District was not vicariously liable for the actions of Grinstead and Nicoletto because they were not acting within the scope of their employment with the School District when they engaged in inappropriate conduct with Sarah. In the second motion, the School District claimed (1) it did not have actual notice of the sexual abuse as required for a Title IX action, (2) it did not violate the mandatory reporting rules because no employee had acquired a reasonable belief of the abuse, (3) it was not liable under the doctrine of assumed duty because the School District did not put Sarah in a worse situation or cause her to forego alternatives to protect herself, (4) it did not breach any fiduciary duty because it made a good faith effort to stop the sexual abuse, and (5) it was not liable for parental consortium because it was not liable under any claim for injuries sustained by Sarah. The Lindemulders resisted the motions, asserting factual issues existed that prevented summary judgment.

---

[5] An additional motion for partial summary judgment was filed by the School District in relation to the Lindemulders' request for punitive damages against the School District. In response to this motion, the Lindemulders filed a motion to amend the petition, removing the claim for punitive damages against the School District. The School District consented to the filing of the amended petition. The court granted the motion to amend and denied the motion for partial summary judgment as it had been rendered moot. No issue regarding punitive damages against the School District is raised on appeal.

After a hearing, the court issued separate rulings granting both motions for partial summary judgment. The rulings dismissed all of the pending claims against the School District.[6] The Lindemulders appeal.

## II. Scope and Standard of Review.

Our appellate court reviews the district court's summary judgment decisions for correction of errors at law. *Sanon v. City of Pella*, 865 N.W.2d 506, 510 (Iowa 2015). "In determining whether summary judgment is proper, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact." *Ne. Cmty. Sch. Dist. v. Easton Valley Cmty. Sch. Dist.*, 857 N.W.2d 488, 492 (Iowa 2014) (citation omitted). If there are no disputed facts and the moving party is entitled to judgment as a matter of law, then summary judgment is proper. *Sanon*, 865 N.W.2d at 510. If the only conflict in the record concerns "the legal consequences of undisputed facts," then the case is properly resolved on summary judgment. *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006) (citation omitted).

## III. Actual Notice under Title IX.

In their first claim on appeal, the Lindemulders assert the district court improperly granted summary judgment on the Title IX claim against the School District because the School District had actual notice of the sexual harassment

---

[6] The claims against Grinstead and Nicoletto remained pending as of the filing of the notice of appeal. The supreme court noted the potential interlocutory nature of the case, and before the case was transferred to this court, the supreme court issued an order that granted the application for interlocutory appeal by assuming, without deciding, the challenged order from the district court was an interlocutory ruling.

and abuse, and failed to adequately investigate and take appropriate remedial measures to protect Sarah.

In 1998 the United State Supreme Court ruled a student may recover damages from a school if the student was subjected to sexual harassment and abuse at the hands of a teacher, but recovery was limited to only those situations where "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

In granting summary judgment to the School District in this case, the court concluded:

> The information available to the supervisory officials in this case was similarly nebulous and non-concrete, involving rumors of "an inappropriate relationship" without specifying any specific conduct. The conduct which was specified—that the parties were seen together at a movie theater, driving together in a motor vehicle, or whispering together in the hallway—simply does not rise to the level of actual notice of sexual misconduct, and no reasonable juror could so find.

The court went on to conclude the Lindemulders had likewise failed to establish there was a factual dispute about whether the School District was "deliberately indifferent" to the sexual harassment and abuse. After analyzing the applicable law, the court found:

> In this case, it is clear that Principal Graves did complete at least a minimal investigation of the rumors regarding Nicoletto, and Graves's investigation of the rumors regarding Grinstead was as thorough as it could be given the vagueness of the information he had received. This court finds that no reasonable juror could conclude from the evidence presented that Graves (and therefore

the [School District]) was "deliberately indifferent" to the rumors involving Nicoletto and Grinstead. Graves took the remedial action he thought appropriate, given the duties of his job. He did not turn a "blind eye" to the rumors reported to him, nor can his response be fairly characterized as "an official decision not to remedy the violation."

. . . .

The court concludes that [the School District] was not deliberately indifferent to allegations of an inappropriate relationship between Sarah and either Grinstead or Nicoletto. The [School District's] response was not "clearly unreasonable" as a matter of law. Therefore, as a matter of law, [the School District] must be granted summary judgment on Plaintiff Sarah Lindemulder's claim of a Title IX violation as alleged in Count VIII.

The Lindemulders claim on appeal the district court failed to give proper weight to certain reports and indications of inappropriate behavior between Sarah and Grinstead and Nicoletto. They assert it should be up to the jury to determine whether or not the complaints received by the School District—being seen together at a movie theater and whispering together in the hotel hallway—were sufficient to conclude the School District had actual notice.

In support of their claim on appeal, the Lindemulders cite two cases asserting rumors, like the ones at issue in this case, were sufficient to generate a jury question on whether the School District had actual notice. In *Chancellor v. Pottsgrove School District*, 501 F. Supp. 2d 695, 708–09 (E.D. Pa. 2007), the court concluded the evidence was sufficient to generate a jury question on actual notice when the principal was notified the student and teacher were seen leaving a restaurant together and the principal received information from the teacher in question that the student had told a friend she was engaged in a sexual relationship with the teacher. While Principal Graves did receive a report from Superintendent Miller that he had heard a rumor Grinstead and Sarah were seen

together at a movie theater, there was no evidence that Principal Graves was informed of a rumor that Sarah and Grinstead or Nicoletto were involved in a sexual relationship. We thus conclude the *Chancellor* case is distinguishable.

The Lindemulders also cite the case of *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1032–33 (D. Nev. 2004), where the court concluded the evidence was sufficient to generate a jury question on whether the school had actual notice when the student reported three instances of inappropriate behavior to the principal, another teacher reported to the principal the student complained of feeling uncomfortable around the teacher in question, and the student's father reported to the principal several inappropriate actions that had been reported to him by the student. The *Doe* court stated that the evidence established the student discussed her concerns regarding the teacher separately with three different people, "who in turn reported the concerns to [the principal]." 298 F. Supp. 2d at 1033.

In this case, Sarah never reported any questionable or inappropriate behavior to Principal Graves, neither did she complain to other individuals who in turn reported the complaints to Principal Graves. She specifically denied any relationship with Grinstead or Nicoletto when questioned by Principal Graves. The evidence in the record shows the only information Principal Graves had was a rumor Sarah and Grinstead were seen at a movie together, Sarah was permitted to ride in a car with Grinstead to get a sandwich during the state track meet and an accident occurred, Sarah and Grinstead had an angry whispered exchange in the hallway of the hotel at the state track meet, and Husted felt uneasy when he confronted Grinstead about the whispered exchange. We agree

with the district court that this evidence alone is not sufficient for a reasonable juror to conclude the School District had actual notice of the sexual abuse or harassment of Sarah at the hands of Nicoletto and Grinstead.

**IV.  Fiduciary Relationship and Assumed Duty.**

For their next claim, the Lindemulders combine both of their claims of fiduciary duty and assumed duty.  As these claims are separate and distinct, we will address them separately, as did the district court.[7]

**A.  Fiduciary Duty.**  The Lindemulders claim Sarah's extensive involvement with the School District through her participation in sports gave rise to a fiduciary duty to protect her from Nicoletto and Grinstead.  "[A] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Weltzin v. Cobank, ACB*, 633 N.W.2d 290, 294 (Iowa 2001) (citation omitted).  The duty exists "wherever one man trusts in or relies upon another." *Id.* (citation omitted).

> A "fiduciary relation" arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal.  Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of another.

*Id.* (citation omitted).  Our courts have looked to the following factors when determining whether a fiduciary relationship exists: "the acting of one person for another; the having and the exercising of influence over one person by another;

---

[7] The School District asserts on appeal that the Lindemulders did not preserve error on the issue of whether the School District had a fiduciary duty to Sarah or assumed a duty. Upon our review of the Lindemulders' resistance to the School District's motions for summary judgment, we conclude the issue was adequately preserved.

the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another." *Id.* (citation omitted).

The district court concluded summary judgment was warranted on this claim because there was no evidence Sarah had a special relationship with any of the administration in the School District.[8] The district court found Sarah placed no confidence, faith, or trust in Principal Graves or the school counselor and directly denied any inappropriate relationship existed when questioned in confidence about the relationships. In addition, Sarah's parents never sought the advice, assistance, or counsel of any member of the School District in dealing with Sarah's relationship with Grinstead or Nicoletto. Absent any case law to support a conclusion that a school district had a general fiduciary relationship with all of its students, the district court concluded the undisputed facts did not generate a sufficient jury question.

On appeal, the Lindemulders cite *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 989 F. Supp. 110, 116–17 (D. Conn. 1997). The court in

---

[8] The district court had previously rejected the Lindemulders' claims that were grounded on the theory of respondeat superior. Thus, the court on this issue did not address their claim that Sarah's relationship with individual teachers or coaches gave rise to the School District's duty to protect her based on an agency relationship between the teachers/coaches and the School District.

> The court agrees with Plaintiffs that a jury question has been generated on the issue of whether Nicoletto and Grinstead, defendants in this case, had a fiduciary relationship with Sarah. However the fact that Sarah may have had a fiduciary relationship with Nicoletto and Grinstead, or even with Mason and Husted, does not equate to a fiduciary relationship with [the School District]. The court has previously ruled that the doctrine of respondeat superior does not apply in this case, and [the School District] is not vicariously liable for the acts of its teacher/coach employees.

The district court's summary judgment decision on the respondeat superior claims is addressed later in this opinion.

*Martinelli* concluded there was a factual dispute sufficient to survive summary judgment on the issue of whether there was a fiduciary relationship between the diocese and a parishioner family because there was evidenced to show: "the Martinellis were active members of their parish, that plaintiff received sacraments and attended catechism classes through the parish, that plaintiff spent much time with [the abuser priest], and that plaintiff's parents knew and approved of the time their son was spending with the priest." *Martinelli*, 989 F. Supp. at 116–17.

While Sarah was involved in sports such as basketball, cross-country, and track, that participation alone did not give the School District greater "influence" or "dominance" over Sarah, or lead Sarah to depend on the School District to a degree greater than any other student, as is required for the finding of a fiduciary relationship. *See Koenig v. Lambert*, 527 N.W.2d 903, 906 (S.D. 1995) (noting the diocese members were acting as agents or representatives of God and taught the victim to trust, respect, and put his faith in members of the diocese), *overruled on other grounds by Stratmeyer v. Stratmeyer*, 567 N.W.2d 220 (S.D. 1997). As the district court concluded, the record is silent as to whether Sarah or her parents sought the advice, assistance, or counsel of any School District administrator in dealing with Sarah's relationship with Grinstead or Nicoletto. When Principal Graves inquired about Sarah's relationship with Nicoletto and Grinstead, Sarah denied its existence; she did not confide in any administrators or place her trust in them to protect her from further assaults by Nicoletto or Grinstead.[9]

---

[9] Our courts have found a school has "an affirmative duty to take all reasonable steps to protect its students" and "must exercise the same care toward them 'as parents of

We agree with the district court based on the record presented there was not sufficient evidence to generate a jury question regarding whether the School District had a fiduciary duty to Sarah. The Lindemulders did not present evidence they placed their trust or confidence in the School District administration or that the School District exerted influence or dominance over them.[10]

**B.  Assumed Duty.**  The Lindemulders also argue the district court incorrectly granted summary judgment to the School District on their claim of assumed duty. They assert the School District assumed a duty to care and protect Sarah as they would do for every other student that attended the school. Because of this assumed duty, the Lindemulders claim the School District is directly liable for the physical harm they suffered based on the School District's failure to exercise reasonable care in providing teaching and coaching services. They assert because they placed their faith and reliance in the School District, they did not take additional steps to protect themselves.

---

ordinary prudence would observe in comparable circumstances.'" *Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 446 (Iowa 2002) (citation omitted). However, in *Doe*, the plaintiffs were pursuing claims against the school of negligent hiring, retention, and supervision of the teacher who sexually abused his students. *Id.* at 441–42. The Lindemulders are not pursuing a claim against the School District for its own negligence in hiring, retaining, or leaving Sarah unsupervised with Nicoletto or Grinstead. *See IMT Ins. Co. v. Crestmoor Golf Club*, 702 N.W.2d 492, 498 (Iowa 2005) (Cady, J., dissenting) ("It is fundamental that a claim for negligent supervision and retention arises out of the employer's own conduct. The tort does not, in any way, impose liability on the employer for misconduct of the employee." (citation omitted)). It is unclear from the record what the Lindemulders contend the School District did that breached the fiduciary duty they claim exists.

[10] Whether the School District is liable based on principles of agency for actions of its employees will be addressed in the respondeat superior section of this opinion. The Lindemulders' fiduciary duty claims against Nicoletto and Grinstead, based on their status as teachers and/or coaches, remain pending.

Assumed duty is described in the Restatement (Second) of Torts section 323 (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

This section only applies "when the defendant's actions increased the risk of harm to plaintiff relative to the risk that would have existed had the defendant never provided the services initially." *Jain v. State*, 617 N.W.2d 293, 299 (Iowa 2000) (citation omitted). In other words, "the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun performance." *Id.* (citation omitted). The defendant must have done something to increase the risk of harm, not failed to do something. *Id.* In addition, the plaintiff must show an "actual or affirmative reliance" on the actions of the defendant that caused the plaintiff to forego other alternatives of protecting himself. *Id.* (citation omitted).

In granting summary judgment on this claim, the district court stated, "It seems obvious, however, that providing teaching and coaching services is not a service 'necessary for the protection' of any student. This asserted 'undertaking' simply does not fit the language of section 323." *See* Restatement (Second) of Torts § 323 (noting the doctrine of assumed duty requires that the one who renders the service should know the service is for the protection of the other's person or things). The court noted the only service the School District performed

that could arguably be said to be for the protection of the Lindemulders was to investigate the rumors about the inappropriate relationships between Sarah and Nicoletto and Grinstead. The court noted there was no evidence that this investigation "increased" the risk of harm to Sarah, *see* Restatement (Second) of Torts section 323(a), or that the Lindemulders relied on the School District's investigation such that they did not engage other alternatives to protect Sarah. *See Jain*, 617 N.W.2d at 299. The court stated there was no evidence that any of the alternative actions the Lindemulders could have taken to protect Sarah were discouraged by the School District's investigation.

In addition, the court noted that the Lindemulders' claim was really one that alleged the School District failed to take some action to protect Sarah. However, any claim that the School District failed to perform an obligation to protect Sarah does not fit within the doctrine of assumed duty, which requires "sins of commission rather than sins of omission." *See id.* (citation omitted). To be liable under assumed duty, one must render services, not fail to render services.

The district court concluded:

[The School District] did not engage in any positive undertaking to protect Sarah or render her any protective services, except the investigation previously described. That investigation did not increase Sarah's risk of harm, nor did the investigation discourage Sarah or her parents from providing protection to her. Neither Sarah nor her parents suffered any harm because of reliance upon the investigation.
    The elements of "assumed duty" thus cannot be proven in this case. . . .
    The Court concludes that no material facts are in dispute with respect to the doctrine of assumed duty. Plaintiffs have not set forth any evidence which would entitle them to a jury verdict under such doctrine.

Upon our review of the record, we agree. The facts as they exist in this case do not support a conclusion that the School District assumed a duty to protect the Lindemulders by virtue of providing teaching and coaching services.

**V. Mandatory Reporting.**

Next, the Lindemulders claim it was error for the district court to grant summary judgment on their claim of a violation by the School District of the mandatory reporting requirements under Iowa Code section 232.69 (2011). They claim when no teacher or coach reported the abuse as required by the mandatory reporting law that failure resulted in a violation for the employee but also a violation for the School District itself because the School District, as an institution, cannot act except through individuals. They claim Nicoletto, Grinstead, Husted, Taylor, and Mason should have made a report. Nicoletto had knowledge of Grinstead's abuse, and Grinstead had knowledge of Nicoletto's abuse. Husted stated he did not want to know if anything was going on between the two but adamantly told Grinstead to cease any behavior that appeared inappropriate. Sarah claims Taylor was present to see kissing and hand-holding between her and Grinstead, but again, there is no statement by Taylor in the record to confirm or deny this allegation. Mason observed her vehicle near Grinstead's home and told Grinstead that it did not look good.

Iowa Code section 232.69 requires certain individuals to report child abuse if the person reasonably believes the child has suffered abuse. A violation of this mandatory reporting duty is a simple misdemeanor pursuant to section 232.75(2). In order to be criminally liable, a person must *knowingly* fail to report or *knowingly* interfere with an investigation. Iowa Code § 232.72(2). Thus, for a

person to have committed a violation under section 232.75, intentional conduct is required. An employer is responsible for the intentional tortious conduct of its employees only if the tort "was done in furtherance of the employer's business or was intended, in part, for the employer's benefit. The intentional tort must have been calculated to facilitate the employer's business, or actuated by a purpose to serve the employer's interests." 30 C.J.S. *Employer—Employee* § 234 (2016).

There are no facts to support the conclusion that the individual teachers' or administrator's failure to report the abuse in this case was done to further the School District's business or for the benefit of the School District. Rather, the record supports the conclusion that the School District fulfilled its obligation to ensure all employees obtained the necessary education on the mandatory reporting requirements and had in place an employee policy for reporting child abuse. Thus, assuming without deciding the information the individual teachers or coaches had in this case triggered their mandatory duty to report the information to the appropriate authorities, the individuals' actions, or rather their inaction, cannot be imputed to the School District through vicarious liability.

## VI. Foreseeability to Support a Claim Based on Respondeat Superior.

Finally, the Lindemulders claim the School District should be liable for their damages based on Nicoletto's and Grinstead's employment with the School District. They claim the facts show some of the abuse occurred on school property and at school-sponsored events, and Nicoletto and Grinstead had access to Sarah by virtue of their official positions with the School District. They argue this should translate to the School District being vicariously liable for the abuse Sarah sustained, even if it is clear that the abuse was not authorized by

the School District. The Lindemulders also claim the court should have left the question of whether the abuse was within the scope of employment for the jury, despite the fact it departed markedly from the School District's business. They assert, based on the facts in the record, the jury could reasonably conclude the sexual relationships stemmed from Nicoletto's and Grinstead's district-sanctioned roles.

"[U]nder the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). Two elements must be proven for a claim of vicarious liability: "proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Id.* (citation omitted). There is no dispute that both Nicoletto[11] and Grinstead were employed by the School District when the sexual activity occurred. Thus, the question turns on whether the conduct was perpetrated within the scope of employment.

> [F]or an act to be within the scope of employment the conduct complained of "must be of the same general nature as that authorized or incidental to the conduct authorized." Thus, an act is deemed to be within the scope of one's employment "where such act is necessary to accomplish the purpose of the employment and is intended for such purpose."

*Id.* (citations omitted).

> Although the question of whether an act is within the scope of employment is ordinarily a jury question, depending on the surrounding facts and circumstances, the question as to whether

---

[11] Nicoletto was employed under a coaching authorization. See footnote 1 for a discussion on Nicoletto's status as a "school employee" for the purposes of Iowa Code section 709.15 (2009).

the act which departs markedly from the employer's business is still within the scope of employment may well be for the court.

*Id.* at 706 (quoting *Sandman v. Hagan*, 154 N.W.2d 113, 118 (Iowa 1967)).

In *Godar*, our supreme court determined the school could not be held vicariously liable for the sexual abuse perpetrated by the curriculum director of a school on a student. *Id.* at 706–07. The abuse was not of the same general nature as the curriculum director's job duties, nor was the abuse done in the furtherance of his duties as the curriculum director. *Id.* at 706. The sexual abuse was a substantial deviation from his duties and substantially different in nature from what the school had authorized the curriculum director to do. *Id.* While his job gave him the opportunity to become acquainted with the victim, that did not support a finding that the conduct furthered the educational objectives of the school. *Id.* at 707. The court also stated, "[T]he fact that the abuse occurred on school district property does not make the school district automatically liable for abuse by its employee. Nor is it sufficient to show the abuse would not have occurred but for [the curriculum director's] employment by the school district." *Id.* The court concluded:

> There simply was no evidence to show that [the curriculum director's] alleged conduct was expected, foreseeable, or sanctioned by the school district. We do not believe that sexual abuse by a teacher is a "normal" risk associated with the objectives of educating students such that it should be a risk that should be borne by the school district.

*Id.*

In granting the School District summary judgment against the Lindemulders' claims based on vicarious liability for the actions of Nicoletto and Grinstead, the district court stated:

Applying the *Godar* analysis to the instant case, it is obvious to the Court that Grinstead and Nicoletto were not acting in furtherance of their teaching and coaching duties to the school district when they sexually abused Sarah Lindemulder. Nothing about this sexual abuse was necessary to accomplish the purpose of their employment or intended for that purpose. Rather, Grinstead and Nicoletto were indulging their own individual selfish and lustful purposes and desires. In no way was their conduct motivated by "a purpose to serve the master." The sexual behavior Grinstead and Nicoletto engaged in was a "substantial deviation from their duties" and "substantially different" from the duties authorized by the school district.

Nor is there any evidence that Grinstead or Nicoletto's conduct was in any way "expected" or "sanctioned" by the school district.

The court went on to analyze whether the conduct was "foreseeable" in light of the Lindemulders' claim the School District was put on notice in many ways that Sarah was having an inappropriate relationship with Nicoletto and Grinstead and turned a blind eye. The court concluded:

There is basically no evidence whatsoever in the record presented to the Court that the DCCSD School Board was ever notified of a suspected inappropriate relationship between Sarah and either Nicoletto or Grinstead. The information allegedly available to Principal Graves was as follows: (1) the DCCSD superintendent heard a rumor that Sarah and Grinstead were seen at a movie together; (2) Coach Husted had seen Sarah and Grinstead whispering in a hotel hallway together while at a track meet and the coach had confronted Grinstead; (3) Coach Husted had authorized Sarah and Grinstead to leave the track meet to get a sandwich together and they had been involved in a motor vehicle traffic accident; (4) a parent called to report a rumor that Sarah and Nicoletto were involved in an inappropriate relationship.
. . . .
Under this record, it is impossible to say that the principal or the Davis County School Board should have foreseen that Nicoletto and Grinstead would engage in sex acts with Sarah. No one who made any reports to Principal Graves even alleged that there had been any inappropriate touching between Sarah and these men, let alone sexual assault. Sarah lied about her relationships with both men and Principal Graves alleges he found her to be credible. The Court finds that a relationship which is actively concealed is not foreseeable.

. . . .

. . . [T]his Court concludes that in this case the DCCSD could not and should not have foreseen the relationship between Sarah and Nicoletto or Grinstead. This conclusion is based upon the fact that these three concealed the existence of such a relationship, and no other district employees reported direct, concrete observations of any sexual nature. Indeed, . . . none of the rumors brought to Principal Graves's attention concerned any sexual conduct or contact between these parties. When the parties denied any inappropriate relationship, Principal Graves was left with little further recourse. His investigation was essentially at a standstill. Closer vigilance could have had no effect. Principal Graves certainly never indicated to Sarah, Grinstead, or Nicoletto that sexual behavior would be acceptable or condoned by the school district.

We agree with the district court's analysis. The fact that some of the sexual activity occurred on school property and at school-sponsored events does not impose strict liability on the School District or prove the inappropriate relationships would not have happened but for the employment relationship. *See id.* In addition, there are no facts in dispute to generate a jury question of whether the conduct perpetrated by Nicoletto and Grinstead was within the scope of employment. The court properly granted summary judgment to the School District for all claims the Lindemulders alleged against the School District that were based on the vicarious liability of Nicoletto and Grinstead.

## VII. Conclusion.

We find no error in the district court's grant of summary judgment in favor of the School District in this case. The court correctly concluded there was no factual dispute that the School District did not have actual notice of the sexual abuse and harassment so as to support a claim under Title IX. We agree with the court's conclusion there were no facts to support a claim the School District had a fiduciary relationship or assumed a duty of care to protect Sarah. In

addition, assuming without deciding the individual teachers and coaches implicated in this case had enough information to trigger their mandatory duty to report the information, the facts in this case do not support the conclusion the school would be vicariously liable for the inaction of these educators. Finally, there is no factual dispute regarding whether Grinstead and Nicoletto were acting within the scope of their employment or whether their actions were foreseeable under a claim based on respondeat superior.

**AFFIRMED.**